2009 Ark. 299

**TRAVIS LUMBER COMPANY; J.W. Mooty Timber Company, Inc.; J.W. Mooty II; Westlake Logging, Appellants,**

v.

**Joe Richard DEICHMAN, as Trustee of the Margaret Louise Camp Deichman Revocable Trust, Administrator of the Estate of Margaret Louise Camp Deichman, and Individually, Appellee.**

No. 08–916.

Supreme Court of Arkansas.

May 21, 2009.

Rehearing Denied June 25, 2010.

Friday, Eldredge & Clark, LLP, by: Clifford W. Plunkett, Seth M. Haines, and C. Aaron Holt, Fayetteville, for appellee.

ANNABELLE CLINTON IMBER, Justice.

Appellant/Cross–Appellee Travis Lumber Company ("Travis Lumber") appeals from a judgment entered by the Yell County Circuit Court in favor of Appellee/Cross–Appellant Joe Richard Deichman ("Deichman"), trustee of the Margaret Louise Camp Deichman Revocable Trust ("the trust"). Travis Lumber asserts four points of error on appeal: 1) the jury verdict granting statutory double and treble damages and punitive damages was not supported by sufficient evidence; 2) the jury's compensatory damage award of $347,714.25 was excessive and requires a new trial; 3) the circuit court erred in admitting inadmissible evidence; 4) the circuit court failed to properly instruct the jury as to the elements of liability under the applicable statutes. Deichman has cross-appealed from the circuit court's judgment, alleging three points of error: 1) the circuit court erred in dismissing his claims on behalf of the estate of Margaret Louise Camp Deichman; 2) the circuit court erred in ruling that Deichman, as trustee, could not recover for damages accrued before December 17, 1997; 3) the circuit court erred in refusing to award prejudgment interest. Because this appeal involves a substantial question of law concerning the interpretation of an act of the General Assembly, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(6) (2008). We agree that the circuit court erred in failing to order a new trial due to excessive damages or, alternatively, to order a remittitur. We affirm the judgment on condition of remittitur.

On October 26, 2000, Deichman filed a complaint in the circuit court in his capaci-

Frye Law Firm, PA, by: William C. Frye; North Little Rock, and Ledbetter, Cogbill, Arnold & Harrison, LLP, by: Jim A. Arnold II, and Victor L. Crowell, Fort Smith, for appellant.

ty as trustee of the trust and executor of the estate of his mother, Margaret Louise Camp Deichman ("Margaret"). The named defendants were J.W. Mooty Timber Company; J.W. Mooty, II ("Mooty"); Travis Lumber; and John Does 1 through 20. The complaint was amended on January 25, 2001, and added Westlake Logging as a defendant. The amended complaint also brought claims on behalf of Deichman individually and changed the style of the case to show that he was the administrator, rather than executor, of his mother's estate. The crux of the complaint and amended complaint was that the defendants had engaged in the wrongful harvesting of timber from Yell County property owned at various times by Deichman, his mother, and the trust.

Specifically, the complaints alleged that in August 1997, Mooty illegally forged a timber deed purporting to transfer the right to cut and remove certain timber from the property to J.W. Mooty Timber Company. The signature on the forged deed, purporting to be that of "Louise Diechman," was not authorized by Margaret. Mooty testified at the trial of this matter that he knew there was "something wrong" with the deed as it was unsigned in his Arkansas office one day and appeared in his office the following day bearing the signature, despite the fact that Margaret lived in Chicago. The complaints further alleged that in September 1997, Mooty and J.W. Mooty Timber Company unlawfully executed a timber deed purporting to transfer title to the timber on the property to Travis Lumber. This deed transferred title to "[a]ll pine and hardwood timber 8″ in diameter and larger at ground level." The complaints alleged that in February 1998, Travis Lumber employed, directed,

or authorized Westlake Logging to enter the property and harvest the timber.[1] Travis Lumber then milled or sold the timber to others. According to Mooty's testimony, he offered the timber rights to Travis Lumber and no one else, knowing that the deed had been forged.

Prior to December 17, 1997, Margaret owned the property at issue in her individual capacity. On that date, while the harvesting of the timber was ongoing, she transferred the property to the trust. Margaret was named as trustee, and Deichman was named as successor trustee. Deichman was also the beneficiary under the trust. In addition, Deichman was named executor of his mother's estate under her will. According to the complaints, Deichman and his mother were unaware of the unlawful harvesting until October 2000, shortly before Margaret's death. Travis Lumber asserted in its answer that it was also unaware of any suggestion of invalidity of the timber deed until October 6, 2000. According to Mooty's testimony, he was indicted and pled guilty to wire fraud and mail fraud. His indictment included the allegation that he "devised a scheme for obtaining money and property from timber owners and timber cutters by making fraudulent representations."

In his complaints, Deichman asserted claims for conversion, trespass, and statutory recovery under Arkansas Code Annotated sections 15–32–301 and 18–60–102. Section 15–32–301 permits a landowner to recover double the value of timber unlawfully cut down, destroyed, or carried away by someone who does so knowingly. Ark. Code Ann. § 15–32–301(a) (Repl.2003). A person who aids and abets or assists another in such activity or who purchases or receives timber knowing it to have been

---

1. The record shows that the harvesting actually took place between November 8, 1997, and February 16, 1998.

unlawfully cut is also liable for double damages under section 15–32–301. *Id.* Section 18–60–102 permits treble damages for trespass if the trespasser shall "[c]ut down, injure, destroy, or carry away any tree placed or growing for use or shade or any timber, rails, or wood, standing, being, or growing on the land of another person." *Id.* § 18–60–102(a)(1) (Repl.2003). However, if the trespasser had probable cause to believe that the land or the thing removed or destroyed was his or her ₅own, then the landowner recovers single damages only. *Id.* § 18–60–102(c). Pursuant to these statutes, Deichman sought "recovery of double or triple damages, including compensatory damages for the fair market value of the timber, the reduced value of the Property, the costs to restore the Property to its original condition, clean-up cost associated with the damage to the Property, punitive damages, prejudgment interest, post-judgment interest, attorneys fees, and costs."

On August 22, 2005, Travis Lumber filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that Deichman's claims as administrator of the estate should be dismissed with prejudice due to his failure to obtain ancillary letters of administration authorizing him to sue on behalf of the estate. Alternatively, Travis Lumber sought dismissal of all claims on behalf of the estate that accrued before January 25, 1998. Deichman was appointed representative of his mother's estate and granted letters of office by a December 28, 2000 order of the Circuit Court of Cook County, Illinois. In its motion to dismiss, Travis Lumber asserted that, even if this order granted Deichman authority to file suit on behalf of the estate in Arkansas, the original complaint was a nullity because these letters had not been obtained at the time of filing. It alleged that any claims on behalf of the estate for damages accruing before three years prior to the filing of the amended complaint were barred by the statute of limitations.

On September 28, 2005, the circuit court entered an order of dismissal, dismissing with prejudice all claims on behalf of the estate. Specifically, the court found that both the ₆original and amended complaints failed to comply with the statutory requirements for the filing of ancillary administration and the statutory bond requirement of Arkansas Code Annotated section 16–61–110, making both complaints nullities. The circuit court also found that the December 17, 1997 deed transferring Margaret's interest in the property to the trust "did not convey any accrued causes of action for property damage"; therefore, the claims of the estate were never transferred to the trust.

Travis Lumber filed a motion in limine on October 23, 2007, seeking to exclude certain evidence at trial. Pursuant to Arkansas Rules of Evidence 401, 402, and 403, Travis Lumber sought exclusion of "any and all evidence of any damages of Plaintiff, Joe Richard Deichman, as the Administrator of the Estate of Margaret Louise Camp Deichman, due to this Court's September 20[sic], 2005 dismissal of all of the damage claims of the Estate of Margaret Louise Camp Deichman." Travis Lumber argued that evidence of damages accruing prior to December 17, 1997, was irrelevant. This portion of Travis Lumber's motion was granted at a pretrial hearing. Pursuant to Rules 801, 602, 403, and 404, Travis Lumber also sought exclusion of Mooty's testimony to the effect that he gave $15,000 to an associate and intended that it be forwarded to a Travis Lumber employee. The circuit court declined to rule on this portion of the motion until trial. Finally, Travis Lumber also sought exclusion of portions of the testimony of Carroll Cochran, Deichman's expert witness, on four bases: that he lacked the

requisite foundation and knowledge to testify as an expert regarding the standard of care of Arkansas timber companies in verifying the validity of timber deeds; that his estimation of the fair market value of the timber removed erroneously included damages incurred by the estate and damages incurred by the trust; that his estimation of the fair market value was erroneously based on the value of timber in southern Arkansas; and that the basis of his damages calculations should be limited to sixty trees per acre. The circuit court declined to rule on the first issue until trial, denied the motion in limine as to the second and third issues, and preliminarily granted the motion as to the fourth issue, ruling that Cochran could testify as to other calculations if evidence introduced at trial supported that testimony.

A jury trial was held October 30 through November 1, 2007. Mooty, J.W. Mooty Timber Company, and Westlake Logging did not appear. At the close of Deichman's case, the circuit court granted Travis Lumber's motion for directed verdict as to the claims brought by Deichman in his individual capacity. The court also granted Travis Lumber's directed-verdict motion as to the claims against the John Does. At the close of all of the evidence, the court granted Deichman's directed-verdict motion, finding the defendants liable for conversion, trespass, and single statutory damages under sections 15–32–301 and 18–60–102. In addition, the court granted Travis Lumber's directed-verdict motion as to any claim of conspiracy.

The jury was informed by interrogatory that "[t]he Court has ruled as a matter of law that Defendants entered the property of The Margaret Louise Camp Deichman Revocable Trust and removed timber from the property, despite not being authorized to do so. These acts constitute a trespass and resulting conversion for which Plaintiffs are entitled to recovery." The jury found the fair market value of the timber that was harvested on or after December 17, 1997, to be $347,714.25. The jury additionally found that Mooty (or J.W. Mooty Timber Company) and Travis Lumber willfully and intentionally caused the timber to be removed without probable cause to believe that they owned it, and that they caused the timber to be removed knowing that they had not acquired a document signed by Margaret authorizing the sale of the timber.[2] The jury assessed punitive damages against Mooty and J.W. Mooty Timber Company in the amount of $750,000 and against Travis Lumber in the amount of $375,000. Deichman elected to recover treble damages under section 18–60–102 from Travis Lumber and to recover punitive damages from Mooty. On November 13, 2007, Deichman filed a motion for prejudgment interest.

The judgment of the circuit court was entered on December 12, 2007. The court found that Deichman, as trustee of the trust, had a judgment against Travis Lumber, Mooty, J.W. Mooty Timber Company, and Westlake Logging, jointly and severally, in the amount of $347,714.25, less $4,288.71, which had previously been paid by Mooty as restitution, for a net judgment of $343,425.54. The court also awarded costs in the amount of $795 under section 18–60–102. The court entered judgment against Travis Lumber in the additional amount of $695,428.50, representing treble damages under section 18–60–102, and against Mooty and J.W. Mooty

---

**2.** The jury found that Westlake Logging had not willfully or intentionally removed the timber without probable cause to believe that Travis Lumber owned it and had not removed the timber knowing that it had not acquired a document signed by Margaret selling the timber.

Timber Company in the additional amount of $750,000, representing punitive damages. Deichman's motion for prejudgment interest was denied. He was granted postjudgment interest from the date of filing of the judgment until collection in the amount of ten percent.

Travis Lumber filed a posttrial motion for judgment notwithstanding the verdict and an alternative motion for new trial, based on insufficient evidence to support the finding that it acted willfully and intentionally, insufficient evidence to support the damage award of $347,714.25, erroneous evidentiary rulings, and improper jury instructions, which allegedly failed to address the elements of the statutory claims. These motions were denied in their entirety. Travis Lumber filed a timely notice of appeal; Deichman, as trustee of the trust, administrator of the estate, and individually, filed a timely notice of cross-appeal. No other party has appealed.

## I. *Points on Appeal*

### A. *Sufficiency of the Evidence*

■ For its first point on appeal, Travis Lumber challenges the jury's finding that it acted willfully and intentionally, which it contends was necessary to support the grant of double and treble damages under the statutes and the grant of punitive damages. Travis Lumber asserts that, under the public-records doctrine, it was entitled to rely on the recorded timber deed purporting to convey the timber rights from Margaret to Mooty. Travis Lumber further argues that any evidence of its negligence, carelessness, or recklessness in accepting the validity of the deed is insufficient to support the finding that it acted willfully and intentionally.

We are precluded from reaching the merits of this argument. To the extent that Travis Lumber argues that the evidence did not support the grant of punitive damages, the issue is moot. Deichman elected to recover treble damages from Travis Lumber and punitive damages from Mooty; thus, the jury's award of $375,000 in punitive damages against Travis Lumber was not a part of the circuit court's judgment. Travis Lumber's arguments as to double damages under section 15–32–301 are similarly moot.

■ Additionally, the arguments as to treble damages under section 18–60–102 were not properly preserved for appellate review, as Travis Lumber failed to renew its motion for directed verdict on this issue at the close of all of the evidence. Pursuant to our civil procedure rules, "[w]hen there has been a trial by jury, the failure of a party to move for a directed verdict at the conclusion of all the evidence, because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict." Ark. R. Civ. P. 50(e) (2008). Rule 50(a) requires that a motion for directed verdict "state the specific grounds therefor." Ark. R. Civ. P. 50(a).

The record reflects that Travis Lumber moved for directed verdict at the close of Deichman's case, arguing in part that Deichman had presented insufficient evidence to demonstrate that Travis Lumber acted willfully or intentionally, such that the claims for punitive damages and for double and treble damages under the statutes could not be sustained. The motion was denied at that time. At the close of all of the evidence, Travis Lumber moved for "directed verdict on the issue of punitive damages, common law punitive damage for any of the claims asserted," on the basis that the evidence did not establish intentional conduct. Counsel for Travis Lumber specifically stated that he was "not talking about the two statutory multiplier claims." Thus, while Travis Lumber

attempts to portray its renewed motion as incorporating all of its earlier arguments, it is clear that the argument as to statutory multipliers was specifically omitted. In accordance with Arkansas Rule of Civil Procedure 50(e), the argument was waived.

### B. *Excessive Jury Verdict*

For its second point on appeal, Travis Lumber challenges the jury's finding that the fair market value of the timber removed on or after December 17, 1997, was $347,714.25. Specifically, Travis Lumber argues that allegedly inadmissible evidence inflamed the passions and prejudices of the jury, causing it to award more in compensatory damages than Deichman had requested. When an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorable to the appellee and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part of the jury. *Calvary Christian Sch., Inc. v. Huffstuttler,* 367 Ark. 117, 132, 238 S.W.3d 58, 70 (2006). Remittitur is appropriate when the compensatory damages awarded are excessive and cannot be sustained by the evidence. *Advocat, Inc. v. Sauer,* 353 Ark. 29, 43, 111 S.W.3d 346, 353 (2003). The standard of review in such a case is that appropriate for a new trial motion, that is, whether there is substantial evidence to support the verdict. *Id.* Under Arkansas Rule of Civil Procedure 59(a)(4), a new trial may be granted due to "excessive damages appearing to have been given under the influence of passion or prejudice." *Id.* (citing Ark. R. Civ. P. 59(a)(4) (2008)).

As Travis Lumber points out, Deichman's counsel requested damages in the amount of $161,845.30, in addition to $20,915 for reforestation, during closing argument. This was based on the testimony of Carroll Cochran, who estimated that the total fair market value "at the stump" of the timber removed from the property between December 17, 1997, and the end of the harvest was $161,845.30. Cochran's estimate of the fair market value was broken down into three categories: $153,643.20 in pine saw logs, $4,039.60 of pine pulpwood, and $4,162.50 in hardwood. Cochran's estimate of the value of the pine saw logs was based on his opinion that the timber was worth $60 per ton and that there were 2,560.72 tons harvested between December 17, 1997, and February 16, 1998. During its deliberations, the jury posed the following question: "Mr. Plunkett [Deichman's counsel], Where do you come up with this figure $161,845.30 in closing[?]"

According to Travis Lumber, because the jury's award of $347,714.25 was more than twice as high as what the plaintiff requested and more than any expert testified to, it is clear that the jury was influenced by passion or prejudice. Travis Lumber points to two pieces of evidence that it claims were inadmissible and led to the excessive award. First, it challenges the circuit court's ruling allowing Cochran to testify to the full value of all of the timber removed from the property, even before the date that the property was transferred to the trust, because Deichman's claims on behalf of the estate had been dismissed.[3] Second, it challenges Mooty's testimony asserting that he gave $15,000 to an associate and asked that it be delivered to a Travis Lumber employee to "try to get this whole thing smoothed out." As indicated later in this opinion, we reject

---

3. Specifically, Cochran testified that $497,769.60 worth of pine saw logs were removed from the property during the entire harvest. This was based on the price of $60 per ton and his estimation that 8,296.16 tons were harvested.

Travis Lumber's arguments on these evidentiary rulings. However, even assuming that this evidence was properly admitted, we cannot say that substantial evidence supports the jury's verdict. We agree that the jury's award of $347,714.25 in compensatory damages is excessive under the circumstances of this case.

Based on our review of each witness's testimony, the figure of $347,714.25 appears to have been arrived at arbitrarily, for there is no numerical evidence to support it. It is true, as Deichman points out, that various witnesses for Travis Lumber testified that they agreed with some of Cochran's methodologies. For example, Terry Bryant, a Travis Lumber employee, testified that he found Cochran's use of an adjacent property, in estimating the size and number of trees on the property at issue, to be reasonable. David Reinold, a forester and appraiser who testified on behalf of Travis Lumber, stated that he generally agreed with ⌊14 Cochran's assumption that the property had approximately sixty stems per acre. However, Reinold disagreed with Cochran's tonnage calculations and his estimated value of $60 per ton. Tom Post, a procurement manager for another area timber company, also agreed with Cochran's stem count as well as his volume calculations; but, Post testified that he had never heard of timber selling for $60 per ton in Yell County and that the $40 per ton price paid by Travis Lumber was on the "high end." In fact, no witness other than Cochran believed the $60 per ton price to be reasonable. More importantly, even assuming that Cochran's tonnage and price calculations were correct and accepted as such by the jury, the amount awarded exceeded that which would have resulted based on Cochran's estimates.

■ Deichman asserts that the evidence would have supported an inference that there were more stems per acre than Cochran estimated, that the trees were older and thus larger than those on the adjacent property used for comparison purposes, or that the timber was worth more than $60 per ton. However, we can find no evidentiary support for these inferences. In accordance with our standard of review of damage awards, we must construe the proof and all reasonable inferences in the light most favorable to Deichman. Even in so doing, we are unable to determine the basis of the jury's award. In short, none of the tonnage or price calculations testified to by any witness supported the finding that the fair market value of the timber harvested from December 17, 1997, through February 16, 1998, totaled $347,714.25. Deichman cites to a case from the Arizona Court of Appeals, *Liberatore v. Thompson*, 157 Ariz. 612, 760 P.2d 612, 621 (Ariz.Ct.App.1988), stating "[t]hat a jury's ⌊15 award against a defendant exceeds the suggestion of plaintiff's counsel does not alone prove prejudice." We hold, however, that the compensatory damages awarded in the instant case were excessive not because they exceeded what Deichman's counsel requested, but because they were unsupported by even the testimony of Deichman's witness.

■ In his brief, Deichman urges this court to order a remittitur in the event that the compensatory damage award is deemed excessive. As indicated, we have held that remittitur is appropriate when the compensatory damages awarded are excessive and cannot be sustained by the evidence. *Advocat, Inc. v. Sauer*, 353 Ark. at 43, 111 S.W.3d at 353. While remittitur generally is requested from this court in order to lower punitive damages that are found to be grossly excessive or that appear to be motivated by passion or prejudice, we have also held that it is appropriate when the compensatory damages

awarded cannot be sustained by the evidence. *Johnson v. Gilliland*, 320 Ark. 1, 8, 896 S.W.2d 856, 859 (1995). Ordinarily, a general verdict is a complete entity that cannot be divided, requiring a new trial upon reversible error. *Id.* at 9, 896 S.W.2d at 860. When, however, a trial error relates to a separable item of damages, a new trial can sometimes be avoided by the entry of a remittitur. *Id.* Because we are presented with such a situation here, we hold that remittitur is appropriate.

Where no erroneous ruling by the trial court is shown, we allow a remittitur down to the most liberal amount that we would approve if the jury had returned a verdict for that sum. *Ark. State Highway Comm'n v. Bradford*, 252 Ark. 1037, 1040, 482 S.W.2d 107, 108 (1972). As we have indicated, we reject Travis Lumber's challenges to the circuit court's evidentiary rulings; therefore, we must remit Deichman's compensatory damage award down to the most liberal amount that we would have accepted had the jury returned a verdict for that sum. We note that Cochran's testimony, offered on Deichman's behalf, supports a compensatory damage award of $161,845.30, representing the estimated fair market value of the timber removed from the property between December 17, 1997, and February 16, 1998. We therefore reduce the compensatory damage award from $347,714.25 to $161,845.30, with joint and several liability, less $4,288.71, which has been paid by Mooty as restitution, for a net judgment of $157,556.59. We also reduce the treble damages award accordingly, from $695,428.50 to $323,690.60. We affirm the judgment award on condition of remittitur as stated at the conclusion of this opinion.

## C. *Evidentiary Rulings*

For its third point on appeal, Travis Lumber challenges three of the circuit court's evidentiary rulings. Each of the challenged rulings is addressed individually below. In discussing our standard of review for evidentiary rulings, we have said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Advanced Envtl. Recycling Techs., Inc. v. Advanced Control Solutions, Inc.*, 372 Ark. 286, 299, 275 S.W.3d 162, 173 (2008).

### 1. *Cochran's Estimation of Total Damages*

Travis Lumber first contends that the circuit court erred in allowing Cochran to testify as to the fair market value of all of the timber removed from the property, including that which was removed prior to December 17, 1997. Travis Lumber asserts error in the allowance of this testimony because the circuit court's September 28, 2005 order had dismissed Deichman's claims on behalf of the estate, which claims were not conveyed to the trust in the December 17, 1997 deed. According to Travis Lumber, the circuit court's denial of its motion in limine on this point violated Arkansas Rule of Evidence 401, as the evidence was irrelevant, and Arkansas Rule of Evidence 403, as the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or confusion of the issues.

We find no error in the circuit court's ruling. While evidence of damages accruing prior to December 17, 1997, was irrelevant for purposes of calculating the fair market value of the timber removed while the property was owned by the trust, it was relevant and probative on another crucial issue. Specifically, the evidence was admitted to demonstrate that Travis Lumber acted wrongfully, for purposes of an award of treble damages under Arkansas

Code Annotated section 18–60–102, of double damages under section 15–32–301, and of punitive damages. As Deichman notes, the evidence could have supported the inference that Travis Lumber had some knowledge of the invalidity of the timber deed, in that it had grossly underpaid for the timber rights.[4] Moreover, we note that adequate ₁₈precautions were taken to ensure that the jury understood that it was to award damages only for the timber removed on or after December 17, 1997. Cochran's own testimony made this point clear. In addition, the verdict form submitted to the jury reiterated that it was to determine the fair market value of the timber removed "on or after December 17, 1997." For these reasons, we cannot say that the circuit court abused its discretion in admitting this testimony.

### 2. Cochran's Testimony as to Standard of Care and Fair Market Value

■ Next, Travis Lumber challenges Cochran's testimony on two separate issues. First, Travis Lumber alleges that Cochran's testimony on the standard of care for timber companies in verifying the validity of a deed was improper under Arkansas Rules of Evidence 701 and 702, because Cochran admitted that he was unfamiliar with the standard of care for Arkansas in 1997. Travis Lumber also maintains that Cochran's testimony on this issue lacked a proper foundation because he failed to inspect the relevant public records at the Yell County Courthouse. As stated earlier, the circuit court declined to rule on this issue at the pretrial hearing on Travis Lumber's motion in limine. However, the record reflects that Travis Lumber raised an objection on the same basis at trial prior to Cochran's testimony regarding the standard of care.

This objection was overruled; therefore, the issue is properly before us.

■ We conclude that the admission of this testimony was not an abuse of discretion, as the question of the extent of Cochran's knowledge goes to the weight, rather than the ₁₉admissibility, of his testimony. Furthermore, Travis Lumber offers no authority for the proposition that a "locality rule" applies, such that Cochran's testimony would be inadmissible to establish the applicable standard of care in Arkansas. This court has previously held that Arkansas has no same- or similar-locality rule for any profession other than the medical profession. *Carroll–Boone Water Dist. v. M. & P. Equip. Co.*, 280 Ark. 560, 573–74, 661 S.W.2d 345, 352–53 (1983). Therefore, the fact that Cochran's testimony may not have been tailored specifically to Arkansas timber companies was for the jury to consider in weighing the evidence. As we have often stated, it is up to the jury to resolve any conflicts in the testimony and to judge the weight and credibility of the evidence. *McCoy v. Montgomery*, 370 Ark. 333, 341–42, 259 S.W.3d 430, 436 (2007).

■ Secondly, Travis Lumber contends that Cochran's testimony on the fair market value of the timber was speculative, unreliable, lacking in foundation, and confusing to the jury. More particularly, Travis Lumber complains that Cochran's estimates were based upon the fair market value of timber in southern Arkansas rather than central Arkansas. Again, we hold that this argument goes to the weight of Cochran's testimony as opposed to its admissibility. While it was controverted, Cochran did explain the basis of his estimates during his testimony. The fact that Travis Lumber and its witnesses disagreed with Cochran's estimates is no reason to

---

**4.** The record reflects that Travis Lumber paid approximately $221,000 for the deed.

exclude them. We cannot say that the circuit court abused its discretion in permitting Cochran's testimony.

### 3. *Mooty's Testimony*

Lastly, Travis Lumber challenges Mooty's testimony concerning the alleged $15,000 payment to a Travis Lumber employee, alleging that it was improper under Arkansas Rule of Evidence 403. This argument, however, was not properly preserved for appellate review. As we have stated, the circuit court declined to offer a ruling on this argument at the pretrial hearing on Travis Lumber's motion in limine. The testimony was then elicited from Mooty at trial without an objection. It is well settled that to preserve a point for appeal, a proper objection must be asserted at the first opportunity. *Barnes v. Everett*, 351 Ark. 479, 491, 95 S.W.3d 740, 748 (2003). Moreover, failure to obtain a ruling from the trial court is a procedural bar to our consideration of an issue on appeal. *Madden v. Aldrich*, 346 Ark. 405, 425, 58 S.W.3d 342, 357 (2001). Accordingly, we are precluded from addressing the merits of this argument.

### D. *Jury Instructions*

For its final point on appeal, Travis Lumber challenges three of the interrogatories given to the jury. According to Travis Lumber, Interrogatories 1, 3, and 6 violated article 7, section 23 of the Arkansas Constitution, which prohibits judges from charging juries with regard to matters of fact, in that they did not separate the elements of liability under the statutes from the conversion and trespass claims. In other words, because the interrogatories did not stress all of the elements required for a finding of liability under the statutes, particularly knowledge and intent, the jury might have found liability without reviewing the elements. This

court has held that a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Barnes v. Everett*, 351 Ark. at 492, 95 S.W.3d at 748. However, we will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.*

We note at the outset that Travis Lumber is correct in asserting that it raised objections before the circuit court as to Interrogatories 3 and 6, and those objections were overruled. Travis Lumber also proffered two interrogatories for the record upon the overruling of those objections. However, Travis Lumber failed to object or make a proffer as to Interrogatory 1. Pursuant to Arkansas Rule of Civil Procedure 51, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, and no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue." Ark. R. Civ. P. 51 (2008). Accordingly, we are precluded from addressing Travis Lumber's arguments concerning Interrogatory 1.

We conclude that the circuit court did not abuse its discretion in offering Interrogatories 3 and 6, as both were correct statements of the applicable law. Interrogatories 3 and 6 follow the statutory language with regard to the intent requirements of Arkansas Code Annotated sections 15–32–301 and 18–60–102. Specifically, Interrogatory 6 inquires whether Travis Lumber removed the timber "knowing that Travis Lumber Company had not acquired a document signed by Margaret Louise Camp Deichman selling

the timber." This language follows the language of section 15–32–301, which authorizes double damages if the defendant shall *"knowingly* cut down, destroy, or carry away" timber. Ark.Code Ann. § 15–32–301(a) (emphasis added). Similarly, Interrogatory 3 inquires whether Travis Lumber willfully and intentionally caused the timber to be removed "without probable cause to believe that Travis Lumber Company owned the timber located upon the land." This language mirrors that of section 18–60–102, which provides for single damages only if "the defendant had *probable cause* to believe that the land on which the trespass is alleged to have been committed, or that the thing so taken, carried away, injured, or destroyed, was his or her own." *Id.* § 18–60–102(c) (emphasis added). Because these interrogatories were correct statements of the law mirroring the statutory language, we fail to see how they were given in error. We hold that there was no abuse of discretion.

## II. *Points on Cross–Appeal*

### A. *Dismissal of Claims on Behalf of Estate*

For his first point on cross-appeal, Deichman asserts error in the circuit court's September 28, 2005 order dismissing his claims brought as administrator of his mother's estate, for failure to obtain ancillary letters of administration and to comply with the mandatory bond requirement. Deichman maintains that there was no need for him to institute an ancillary administration, as he did not seek to administer or distribute any portion of his mother's estate in Arkansas. He also avers that the bond requirement did not apply to him. Alternatively, Deichman argues that he was authorized to institute suit on behalf of the estate under Illinois law and under his mother's will, which appointed him executor. Although Travis Lumber's motion leading to this order was styled as a motion to dismiss for lack of subject-matter jurisdiction, the circuit court considered matters outside the pleadings in ruling on it. When matters outside the pleadings are presented and not excluded by the circuit court, a motion to dismiss will be treated as a motion for summary judgment. *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.,* 369 Ark. 392, 402, 255 S.W.3d 453, 461 (2007). Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Id.* However, in a case such as this one, which does not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.*

Deichman first takes issue with the circuit court's finding that his failure to file for ancillary administration rendered his original and amended complaints absolute nullities. An ancillary administration is a separate but related proceeding to the administration of the decedent's estate in the jurisdiction where the decedent died. *Craig v. Carrigo,* 340 Ark. 624, 633, 12 S.W.3d 229, 235 (2000). The primary administration of the decedent's estate in the instant case is presumably occurring in Illinois. An ancillary proceeding in Arkansas would serve to collect assets and pay debts of the decedent in this locality. *Id.* Ancillary administration of an estate in Arkansas is governed by Arkansas Code Annotated sections 28–42–101 through 28–42–111 (Repl.2004). *Id.* Deichman, however, argues that he was not required to comply with the statutes governing ancillary administration because he filed suit on behalf of his mother's estate pursuant to the survival statute, which allows an executor or administrator to maintain an

action following the death of the injured party "in the same manner and with like effect in all respects as actions founded on contracts." Ark.Code Ann. § 16–62–101(a)(1) (Repl.2005).

We agree that Deichman was not required to comply with the statutes governing ancillary administration, as he did not seek to institute an ancillary administration in this state. However, both parties seem to be in agreement on the issue of the applicability of Arkansas Code Annotated section 16–61–110, which provides as follows, in its entirety:

> Administrators, executors, and guardians appointed in any of the states, territories, or districts of the United States, under the laws thereof, may sue in any of the courts of this state, in their representative capacity, to the same and like effect as if the administrators, executors, and guardians had been qualified under the laws of this state. However, the administrators, executors, or guardians shall be required, before they shall institute a suit or proceeding, to execute the same bond as is required of other non-residents by the laws of this state.

*Id.* § 16–61–110 (Repl.2005). Pursuant to this statute, Deichman, as a foreign administrator, was required to institute suit as if he had been qualified to do so under Arkansas law. As such, he was subject to the requirements for domiciliary personal representatives, found in Arkansas Code Annotated sections 28–48–101 through 28–48–109 (Repl.2004 & Supp.2007).

While letters of administration are no longer necessary to empower the person appointed to act for the estate, an administrator is empowered to act for the estate by an order of appointment. Ark. Code Ann. § 28–48–102(d) (Supp.2007). This court has interpreted section 28–48–102(d) to mean that letters of administration are unnecessary "so long as there is

an order appointing the administrator." *Steward v. Statler*, 371 Ark. 351, 356, 266 S.W.3d 710, 714 (2007). It is undisputed that, at the time of the filing of the original complaint, Deichman had not been appointed administrator of his mother's estate in any state. Thus, he did not have standing to sue, and the complaint was a nullity. *See Hubbard v. Nat'l Healthcare of Pocahontas, Inc.*, 371 Ark. 444, 267 S.W.3d 573 (2007). Because the original complaint was a nullity, the amended complaint could not relate back to it under Arkansas Rule of Civil Procedure 15(c). *See St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County*, 348 Ark. 197, 73 S.W.3d 584 (2002). Moreover, the amended complaint could not stand on its own; because the last possible cause of action of the estate would have occurred before December 17, 1997, the January 25, 2001 amended complaint was barred by the applicable statutes of limitations. *See* Ark.Code Ann. § 16–56–105(4) & (6) (Repl. 2005) (three-year statute of limitations for trespass and conversion); Ark.Code Ann. § 16–56–108 (Repl.2005) (two-year statute of limitations under penal statutes where penalty or part thereof goes to person suing); *Kutait v. O'Roark*, 305 Ark. 538, 542, 809 S.W.2d 371, 373–74 (1991) (holding that two-year statute of limitations under section 16–56–108 applies to claims brought pursuant to section 18–60–102).

Even if Deichman's amended complaint on behalf of the estate had not been time-barred, it, along with the original complaint, was a nullity for another reason. Deichman contends that the bond requirement of Arkansas Code Annotated section 28–42–103 does not apply to him because he is not seeking an ancillary administration. As we have stated, we agree that Deichman's claims on behalf of his mother's estate were not subject to the code provisions governing ancillary admin-

istration. Section 16–61–110, however, requires foreign administrators to "execute the same bond as is required of other nonresidents by the laws of this state" before instituting suit in Arkansas. Ark. Code Ann. § 16–61–110. The bond requirement for domiciliary personal representatives is set forth in section 28–48–201 (Repl.2004), and, pursuant to section 28–48–101(b)(6)(A) (Repl.2004), applies to nonresidents who have appointed an agent to accept service of process. The failure to give bond results in the revocation of letters of administration already issued and the appointment of another person as personal representative. *Id.* § 28–48–202 (Repl.2004). From our review of the record, it appears undisputed that Deichman did not give bond prior to the filing of either the original or the amended complaint. Therefore, we hold that Deichman lacked standing to sue and that both complaints were nullities.

■■■ Finally, we reject Deichman's alternative contention that he was nonetheless authorized to file suit under either Illinois law or his mother's will, by which he had been appointed executor. According to Deichman, Illinois law permits a person named as executor in a will to take action in order to preserve the estate. A later entry of orders of administration will relate back to the date of the decedent's death and verify the executor's prior actions. *See* 755 Ill. Comp. Stat. 5/6–14; 755 Ill. Comp. Stat. 5/10–4; *Phelps v. Elgin Joliet & E. Ry. Co.*, 37 Ill.App.2d 46, 184 N.E.2d 799 (1962); *Faubel v. Mich. Blvd. Bldg. Co.*, 278 Ill.App. 159 (1934). The problem with this argument is that Deichman offers no authority for the proposition that Illinois law controls this case. This court has recognized that standing is a procedural issue. *Meeks v. State*, 341 Ark. 620, 622, 19 S.W.3d 25, 26 (2000). As such, it is governed by the law of the forum. *Middleton v. Lockhart*, 355 Ark. 434, 438, 139 S.W.3d 500, 502–03 (2003). Accordingly, the issue of whether Deichman had standing to sue on behalf of his mother's estate is governed by Arkansas law. Moreover, under Arkansas Code Annotated section 16–61–110 and the provisions of the Arkansas Probate Code governing domiciliary personal representatives, executors are subject to the same appointment and bond requirements as administrators. Therefore, the fact that Deichman was named executor in his mother's will does not exempt him from the statutory requirements outlined herein. For these reasons, we affirm the circuit court's dismissal of Deichman's claims brought as administrator of his mother's estate.

### B. *Damages Accruing Before December 17, 1997*

■■■ For his second point on cross-appeal, Deichman challenges the circuit court's ruling that his mother's creation of the revocable trust and execution of the warranty deed transferring the property to the trust did not transfer the accrued causes of action for the timber removed prior to December 17, 1997. Because this issue involves a question of law, the appropriate standard of review is de novo. *Pulaski County v. Ark. Democrat–Gazette, Inc.*, 371 Ark. 217, 220, 264 S.W.3d 465, 467 (2007).

Deichman first contends that the terms of the trust instrument itself transferred the causes of action. He points to the trust's grant of general powers to the trustee, including the power to "demand, receive, acknowledge receipt for, sue for, and collect any and all rights, money, properties, or claims to which this trust may be entitled and to compromise, settle, arbitrate, or abandon any claim or demand in favor of or against such trust." Deichman

further argues that the trustee was vested with extensive authority under Arkansas Code Annotated section 28–69–304, which permits a fiduciary to "bring and prosecute or to defend actions at law or in equity for the protection of assets or interests of the estate or for the protection or enforcement of the provisions" of the trust. Ark.Code Ann. § 28–69–304(22) (Repl.2004).

Neither the trust instrument nor section 28–69–304, however, contemplates already-accrued causes of action. The general rule in Arkansas has long been that an assignment of an interest in property does not, of itself, constitute an assignment of accrued causes of action for torts previously committed in reference to the property. *See, e.g., Wasson v. Taylor,* 191 Ark. 659, 87 S.W.2d 63 (1935). The December 17, 1997 warranty deed conveying the property at issue from Margaret in her individual capacity to the trust made no mention of any accrued causes of action. Because we consider the creation of the trust insufficient to have transferred an already-accrued cause of action for the wrongful removal of timber, we affirm the circuit court's finding that Deichman, as trustee, was precluded from recovering damages accrued prior to December 17, 1997.

## C. *Prejudgment Interest*

Finally, Deichman argues that the circuit court erred in denying his motion for prejudgment interest. He maintains that the damages were definitely ascertainable and that he was deprived of the value of the lost timber for nearly a decade, a loss for which he should be compensated. Alternatively, Deichman contends that the circuit court should have at least awarded prejudgment interest on the amount of damages on which the parties agreed.

We have stated that prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of loss until judgment. *Ray & Sons Masonry Contractors, Inc. v. U.S. Fid. & Guar. Co.,* 353 Ark. 201, 223, 114 S.W.3d 189, 203 (2003). Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion. *Id.* at 223–24, 114 S.W.3d at 203. This standard is met if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. *Reynolds Health Care Servs., Inc. v. HMNH, Inc.,* 364 Ark. 168, 180, 217 S.W.3d 797, 807 (2005). Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law. *Ray & Sons Masonry Contractors, Inc.,* 353 Ark. at 224, 114 S.W.3d at 203. However, if the damages are not by their nature capable of exact determination, both in time and amount, prejudgment interest is not an item of recovery. *Id.*

The Arkansas Court of Appeals has affirmed an award of prejudgment interest in a case involving conversion, trespass, and the wrongful harvesting of timber. *Dugal Logging, Inc. v. Ark. Pulpwood Co.,* 66 Ark.App. 22, 988 S.W.2d 25 (1999). In that case, the court emphasized the definiteness with which damages could be ascertained:

The last shipment of logs taken by Dugal to the mills occurred July 20, 1992, thus providing an exact date upon which the conversion was complete and giving the trial judge an exact time from which to begin the running of prejudgment interest. Further, the amount of appellees' damages was capable of exact determination by use of mathematics rath-

er than opinion or discretion. The amounts paid to the mills and the costs incurred by Dugal were capable of being ascertained at the time appellees' cause of action arose.

*Id.* at 31, 988 S.W.2d at 31. Deichman asserts that the same may be said of the instant case and that prejudgment interest therefore should have been granted. We agree that the date upon which the conversion was complete is undisputed and clear from the record. However, the amount of Deichman's damages was not capable of exact determination by use of mathematics. Both the price of the timber per ton and the total tonnage removed from the property were disputed calculations, for which the various witnesses provided mere estimates. As we have indicated, Cochran's testimony that the timber was worth $60 per ton and that 2,560.72 tons were removed from December 17, 1997, to February 16, 1998, was not wholly accepted by any other witness. The jury was required to rely on the witnesses' opinions in order to reach a verdict on damages and was forced to choose among several varying opinions. Accordingly, the circuit court did not err in refusing to award prejudgment interest.

Our cases support this result. For example, in *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 454, 938 S.W.2d 565, 569 (1997), this court reversed an award of prejudgment interest because there was conflicting testimony about the cost of repair that "varied substantially." We held that the damages were neither liquidated as a dollar sum nor ascertainable by fixed standards. *Id.* Moreover, in *Stein v. Lukas*, 308 Ark. 74, 82, 823 S.W.2d 832, 837 (1992), we held that "[t]he fact that the jury awarded an amount higher than the total of repair and replacement costs evidences the difficulty in awarding prejudgment interest in this case." The same may be said of the instant case; the fact that the jury awarded an amount more than twice as high as what Deichman requested "confirms the uncertainty which envelops the damage issue in this case." *Id.* at 83, 823 S.W.2d at 837.

Deichman urges this court to enter an award of prejudgment interest on the amount of the damages for which Travis Lumber admitted it was responsible. More particularly, Deichman points to the calculations of $40 per ton for 2,560.72 tons harvested from the property, for a total amount of damages of $102,428.80, plus $20,000 for reforestation costs. Deichman cites to several cases from various other jurisdictions holding that an award of prejudgment interest is proper to the extent that the parties agree on the amount of damages. We disagree with Deichman's characterization of Travis Lumber's admission. While Travis Lumber appeared to concede that it owed at least some money to Deichman, the parties never agreed upon what amount was owed. Its witnesses testified to several different estimates of the price per ton and the total tonnage removed. Because the evidence varied so widely and the damages were completely incapable of exact determination, we hold that no award of prejudgment interest would be appropriate.

### III. *Conclusion*

We hold that the circuit court erred in failing to order a new trial due to excessive damages or, alternatively, to order a remittitur. We affirm the circuit court in all other respects. If, within eighteen days, Deichman remits $185,868.95 of the $347,714.25 compensatory damages, leaving a compensatory damage award of $161,845.30, less the $4,288.71 already paid in restitution, with joint and several liability, and further remits $371,737.90 of the $695,428.50 treble damages, leaving a treble damage award of $323,690.60, the judg-

ment will be affirmed. Otherwise, the case will be reversed, and the cause will be remanded for a new trial. See *Advocat, Inc. v. Sauer, supra.*

Affirmed on condition of remittitur.

DANIELSON, J., not participating.