Cite as 2025 Ark. App. 184

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-742

| | |
|---|---|
| CARL BALDWIN AND BOB BRADLEY<br>APPELLANTS | Opinion Delivered March 19, 2025 |
| V. | APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. 19CV-20-111] |
| COREY LLOYD<br>APPELLEE | HONORABLE E. DION WILSON, JUDGE |
| | AFFIRMED ON CONDITION OF REMITTITUR |

## MIKE MURPHY, Judge

Appellee Corey Lloyd sued appellants Carl Baldwin and Bob Bradley for wrongfully cutting his timber. A jury found in favor of Lloyd and awarded him $50,000 in damages. In accordance with Arkansas Code Annotated section 15-32-301(a) (Repl. 2016), the circuit court doubled the award and entered a $100,000 judgment in Lloyd's favor. Baldwin and Bradley moved for remittitur or new trial, and the circuit court denied their motion. On appeal, Baldwin and Bradley argue that the court erred by not granting a remittitur or a new trial. Alternatively, they contend the court abused its discretion by allowing irrelevant testimony. We affirm the judgment on condition of remittitur.

Baldwin and Lloyd are adjacent landowners. Baldwin hired Bradley to cut timber from Baldwin's 48 acres in late spring/early summer 2019. Baldwin made $27,000 from the

cut, about $600 an acre; Bradley made $1,200, about $25 an acre. In the fall of 2019, Lloyd went to prepare for the upcoming hunting season and discovered that timber had been cut and removed from his land without his consent. Lloyd owned about 25 acres, and timber had been cut from 3.3 acres of it. Lloyd purchased his land in 2017 for $46,000, about $1,800 an acre. Lloyd filed suit in October 2020 seeking $52,872 in damages, which he claimed included the value of the removed timber as well as the cost of cleanup, stump removal, and a bulldozer rental.

A jury trial was held May 16–17, 2023, and each side put on several witnesses. Lloyd testified he used his land for deer hunting and one day hopes to build a house on it. Lloyd also testified that the eighty-six oak trees that were harvested came from the area that he hunts because the rest of the property has too many cedar trees—the cedar trees do not provide a food source for wildlife.

Lloyd produced two expert witnesses. First, forester Eric Johnson testified that he used a GPS system to map the cut area and a published formula from the forest service to determine the amount of damage caused. He determined the fair market value of the timber cut was $7,439.98 and that of damaged and destroyed trees was $109.07. He estimated $3,400 more for cleanup and $825 for reforestation. He calculated total damages of $11,774.05. His estimate did not include stump removal because he said that removing the stumps disturbs the soil. Johnson's report was admitted into evidence for the jury to consider.

Next, Brad Murphy testified as Lloyd's second expert. He estimated $26,000 in damages. Murphy testified his estimate included building a path for a bulldozer to dig up the stumps, level the ground, and then replant the trees. Ultimately, the court granted Bradley and Baldwin's motion to exclude Murphy's damages testimony and his report because they were speculative and misleading. Murphy's report did not itemize his estimate, and it was based on the wrong number of acres: 5 rather than 3.3.

Jason Andrews also testified for Lloyd. He filmed drone footage of the property damaged, and he introduced it for the jury to watch.

Bradley testified that he contracted with John Cox to harvest the timber. He explained that Cox performed a "select cut" so that only hardwood trees were cut as opposed to a "clear cut" where every tree standing is cut. Bradley testified that he has been in the forestry business for forty-five years, that it is not normal practice to push up the stumps in a select cut, and that natural reforestation is preferred over replanting trees.

Baldwin and Bradley presented one expert witness, Ricky Caldwell. Caldwell testified the damages amounted to $2,992. He did not include an amount for cleanup and testified the trees would regrow on their own.

Following testimony, the court instructed the jury that if it found in favor of Lloyd, it was to base the amount of damages on the fair market value of the timber cut, the reasonable expense of necessary repairs to any property damaged, the cost of tree replacement, and the cleanup cost necessary to the property damaged. After closing arguments and deliberation, the jury found Baldwin and Bradley knowingly caused timber to be cut from Lloyd's land,

and the jury returned a $50,000 verdict for Lloyd. Relying on Ark. Code Ann. § 15-32-301(a), the circuit court doubled the award to $100,000.

Baldwin and Bradley moved for remittitur to the maximum amount of damages in evidence or, alternatively, a new trial. A hearing on the motion was conducted on June 22, 2023. Baldwin and Bradley did not contest the finding of wrongful cutting, but they believed that the jury failed to follow the court's instructions when it disregarded Murphy's testimony in its damages calculation. The defense pointed out that Lloyd's expert calculated the damage to be $3,924.68 an acre and that their expert testified $880 an acre but that the jury came back with a verdict of $14,705 an acre. The defense argued that the circuit court should order remittitur of $19,323.10. It based this number on the testimony of Lloyd's expert, Johnson. Johnson valued the timber at $7,549.05. Under § 15-32-301(a), double that amount is $15,098.10. The remaining damages amount he testified to was $4,225 for cleanup and reforestation. Therefore, Baldwin and Bradley argued that the court should reduce the judgment from $100,000 to $19,323.10 ($15,098.10 + $4,225).

In response, Lloyd argued that the jury was not bound only by the testimony of the foresters and that Bradley and Baldwin's position ignores the testimony of the lay witnesses. Specifically, Lloyd argued that the jury was not left to speculate because it was able to view the damage themselves via the drone footage. Lloyd stated he was opposed to remittitur and asked that if the court found the verdict excessive, a new trial be the appropriate remedy.

After a hearing, the circuit court denied the motion, finding that the verdict did not shock the court's conscience; that the verdict was not the result of passion or prejudice; and

4

that because the judgment was based on a general verdict, the court could not speculate on the jury's damages calculations and thus find that it was excessive. Baldwin and Bradley timely appealed.

The law affecting the grant of a new trial is well settled. Arkansas Rule of Civil Procedure 59(a) provides that a new trial may be granted, among other reasons, for excessive damages appearing to have been given under the influence of passion or prejudice; for error in the assessment of the amount of recovery, whether too large or too small; and when the verdict is clearly contrary to the preponderance of the evidence. Ark. R. Civ. P. 59(a)(4)–(6). The test we apply on review of the grant of a new trial is whether there was a manifest abuse of discretion. *Hogan v. Holliday*, 72 Ark. App. 67, 69, 31 S.W.3d 875, 876 (2000). A manifest abuse of discretion in granting a new trial means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.* A showing of an abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id.* Accordingly, he has less basis for a claim of prejudice than does one who has unsuccessfully moved for a new trial. *Id.*

Baldwin and Bradley contend the facts in this case are identical to those in *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. In *Travis Lumber*, appellant lumber company challenged the jury's finding that the fair market value of the timber wrongfully removed was $347,714.25. At trial, appellee requested only $161,845.30 in damages in addition to $20,915 for reforestation ($182,760.30 total). This amount was based on appellee's expert's testimony. Our supreme court agreed that the jury's award was excessive

5

under the circumstances of the case. In arriving at this conclusion, the supreme court reviewed each witness's testimony and determined that the figure was arbitrary because there was no numerical evidence to support it. The court clarified that it found the damages awarded excessive not because they exceeded what appellee's counsel requested but because they were unsupported by even the testimony of appellee's witnesses.

Lloyd does not address the *Travis* case. Instead, as he did below, he argues that the jury had to consider the testimony from all the witnesses, not just the forester experts. In further support of his argument, Lloyd notes that Baldwin and Bradley focus much of their argument on stump removal, and he contends that it is not their property to choose what is done to the stumps.

Here, Lloyd's own expert testified that stump removal is not necessary in this situation and that damages totaled $11,774.05. Instead he was awarded $50,000—over four times the amount testified to. The jury was instructed to compensate Lloyd for the fair market value of the timber, the cost of replacing the trees plus the reasonable repairs to any property damaged, and the cost of cleanup. Like *Travis*, we lack numerical evidence and are unable to determine the basis for the $50,000 award. Even when construing the proof and all reasonable inferences in the light most favorable to Lloyd as required by our standard of review of damage awards, we are unable to determine the basis of the jury's award.

Baldwin and Bradley ask this court to order a remittitur. Remittitur is appropriate when the compensatory damages awarded are excessive and cannot be sustained by the evidence. *Advocat, Inc. v. Sauer*, 353 Ark. 29, 43, 111 S.W.3d 346, 353 (2003). We review the

issue of remittitur of damages de novo. *ProAssurance Indem. Co. v. Metheny*, 2012 Ark. 461, 425 S.W.3d 689. Ordinarily, a general verdict is a complete entity that cannot be divided, requiring a new trial upon reversible error. *Travis Lumber Co.*, 2009 Ark. 299, at 9, 896 S.W.2d at 860. When, however, a trial error relates to a separable item of damages, a new trial can sometimes be avoided by the entry of a remittitur. *Id.* For example, in *Travis*, the supreme court remitted the damages determined by the plaintiff's expert, reasoning that where no erroneous ruling by the trial court is shown, we allow a remittitur down to the most liberal amount that we would approve if the jury had returned a verdict for that sum. *Id.* at 15, 319 S.W.3d at 250. Because we are presented with such a situation here, we hold that remittitur is appropriate.

In remitting Lloyd's compensatory-damages award down to the most liberal amount that we would have accepted had the jury returned a verdict for that sum, we note that Johnson's testimony supports a compensatory-damages award of $19,323.10.

Accordingly, we hold that the circuit court abused its discretion by not granting a new trial due to excessive damages. If, within eighteen days, Lloyd remits $80,676.90 of the $100,000 judgment, leaving a compensatory-damages award of $19,323.10 with joint and several liability, the judgment will be affirmed. Otherwise, the case will be reversed, and the cause will be remanded for a new trial.

In light of our disposition, we need not reach Baldwin and Bradley's second argument on appeal.

Affirmed on condition of remittitur.

TUCKER and WOOD, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant.

Bob Bradley

*Daggett & Perry, PLLC*, by: *Jesse B. Daggett*, for separate appellant Carl Baldwin.

*Kathleen Talbott*, for appellee.