Steve NORTON, Individually and as Administrator of the Estate of Trina Norton, Deceased *v.* Rex LUTTRELL, M.D.

CA 06-1093                                         257 S.W.3d 580

Court of Appeals of Arkansas
Opinion delivered May 23, 2007

*Harrelson, Moore & Giles, LLP*, by: *Steve Harrelson*, for appellant.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Paul McNeill* and *J. David Dixon*, for appellee.

S AM BIRD, Judge. Appellant Steve Norton filed a wrongful-death/survival action against appellee Dr. Rex Luttrell, alleging that Dr. Luttrell's medical malpractice led to the death of Norton's wife, Trina.[1] On Dr. Luttrell's motion, the trial court granted summary judgment. We affirm.

Trina Norton, a resident of Bowie County, Texas, was admitted to Little Rock's Baptist Medical Center in June 2002 to undergo a gastric-bypass procedure. The procedure was performed by Dr. Luttrell. Two days after the surgery, on June 20, 2002, Mrs. Norton died.

On April 21, 2004, Steve Norton petitioned the Bowie County, Texas, probate court to be appointed administrator of his late wife's estate. On June 18, 2004 — before an order of

---

[1] A second defendant, Baptist Medical Center, was dismissed with prejudice prior to this appeal being filed.

appointment was filed — Norton instituted this lawsuit against Dr. Luttrell. On January 13, 2005, Dr. Luttrell moved for summary judgment on the ground that Norton lacked standing under Arkansas law because he was not his wife's sole heir nor had he been appointed personal representative at the time suit was filed. Attached to the motion were 1) an affidavit from the Bowie County clerk stating that no hearing had yet been held to appoint an administrator, and 2) an obituary listing children, parents, and siblings among Mrs. Norton's survivors. In light of these matters, the doctor claimed that Norton had no authority to file suit; that the June 18, 2004, complaint was a nullity; and that the statute of limitations had now expired, requiring dismissal of the case.[2]

On March 15, 2005, Norton returned to Bowie County, Texas, and obtained an order appointing him administrator. He then filed an amended complaint in his Arkansas action and responded to the motion for summary judgment, arguing that Texas law applied and that it permitted relation back of the amended complaint to the original, June 2004 filing, thereby vesting him with the authority to sue prior to the expiration of the statute of limitations. He further argued that, even though he had obtained the order of appointment out of an abundance of caution, it was unnecessary for him to do so because his wife's heirs had entered into a family settlement agreement, making administration of her estate unnecessary under Texas law.

Dr. Luttrell replied that Arkansas law rather than Texas law governed the case and, under Arkansas law, Norton had no standing at the time the original suit was filed. Further, the doctor said, Norton's amended complaint did not relate back to the original complaint under Arkansas law. After a hearing, the trial court granted summary judgment in favor of Dr. Luttrell.

Under Arkansas law, a survival action cannot be filed by an heir but must be brought by the estate through an executor or administrator. See Ark. Code Ann. § 16-62-101 (Repl. 2005); *Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 64 S.W.3d 764 (2001). A wrongful-death action must be brought by the decedent's personal representative or, if there is no personal representative, by all of the decedent's heirs at law. Ark. Code

---

[2] The two-year statute of limitations for medical malpractice applies where death ensues from medical injuries. *See Davis v. Parham*, 362 Ark. 352, 208 S.W.3d 162 (2005). In this case, the statute of limitations expired on or about June 20, 2004.

Ann. § 16-62-102(b) (Repl. 2005); *Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005). In the present case, when Mr. Norton filed his original lawsuit in June 2004, no order had been entered appointing him as administrator nor were all of the decedent's heirs at law named as plaintiffs. Therefore, Norton had no standing to sue, and his original complaint against Dr. Luttrell was a nullity. *See generally Hackelton v. Malloy*, 364 Ark. 469, 221 S.W.3d 353 (2006) (holding that Ms. Hackelton did not have standing to file a wrongful-death action and her complaint was a nullity because, at the time she sued, she had not yet been appointed as personal representative — although she had filed a petition to be appointed — and she was not the decedent's sole heir). And, because the initial complaint was a nullity, the amended complaint filed after Norton's appointment in 2005 did not relate back to it. *Brewer, supra; Andrews v. Air Evac EMS, Inc.*, 86 Ark. App. 161, 170 S.W.3d 303 (2004). Thus, under Arkansas law, a proper, timely-filed action was never commenced against Dr. Luttrell.

■ Norton argues, however, that Arkansas law should not apply to determine whether he had standing to file this lawsuit. Instead, he claims, Texas law should apply because his wife was a Texas resident and her estate was subject to administration there. We disagree. The issue of standing is a procedural matter. *See Bagwell v. Hartford Cas. Ins. Co.*, 458 F. Supp. 2d 965 (W.D. Ark. 2006) (stating that, under Arkansas law, standing is a procedural issue). Under traditional conflicts-of-law analysis, procedural matters are governed by the law of the forum, which, in this case, was the State of Arkansas. *See Middleton v. Lockhart*, 355 Ark. 434, 139 S.W.3d 500 (2003). Arkansas was also the place where the alleged wrong occurred, meaning that, under a basic *lex loci delecti* analysis, its substantive law would apply as well. *See Ganey v. Kawasaki Motors Corp., USA*, 366 Ark. 238, 234 S.W.3d 838 (2006). Moreover, in wrongful-death cases, our courts have traditionally applied the law of the place where the injury occurred that caused the decedent's death. *See generally McGinty v. Ballentine Produce, Inc.*, 241 Ark. 533, 408 S.W.2d 891 (1966); *Trotter v. Ozarks Rural Elec. Coop. Corp.*, 226 Ark. 722, 294 S.W.2d 498 (1956); *Wheeler v. S.W. Greyhound Lines*, 207 Ark. 601, 182 S.W.2d 214 (1944).

There are also significant Arkansas connections to this case, which is a consideration in more modern conflicts-of-law analysis. The allegedly tortious conduct took place here, the death occurred here, suit was filed here, and the defendant is an Arkansas resident.

*See Schubert v. Target Stores, Inc.*, 360 Ark. 404, 201 S.W.3d 917 (2005) (holding that significant connections to Arkansas were present and Arkansas law applied where the defendants had Arkansas ties and the alleged wrongful conduct occurred in Arkansas). Additionally, Arkansas statutes contemplate that foreign personal representatives may come into Arkansas courts. *See* Ark. Code Ann. § 16-61-110 (Repl. 2005) (providing that foreign administrators, executors, and guardians may sue in the courts of this state) and Ark. Code Ann. § 28-42-102(a)(1) (Repl. 2004) (providing that a foreign personal representative may be issued letters in this state). However, these statutes, and others, subject foreign representatives to the qualification requirements of Arkansas law. For example, section 16-61-110 states that the "appointed" foreign representative may sue in his representative capacity "to the same and like effect as if the [foreign representative] had been qualified under the laws of this state." Arkansas Code Annotated section 28-42-101 (Repl. 2004) provides that, except when special provision is made, "the law and procedure relating to the administration of estates of resident decedents shall apply to ancillary administration of estates of nonresident decedents."[3]

To support his contention that he had standing as a personal representative to file suit in Arkansas, Norton cites *Henkel v. Hood*, 156 P.2d 790 (N.M. 1945). There, Mrs. Henkel, a Texas resident, was killed in New Mexico in a highway accident. Her husband filed a wrongful-death suit in New Mexico, whose laws required that such a suit be filed by the deceased's "personal representative." Prior to filing suit, the husband had been appointed a "community administrator" in Texas, which, under Texas law, accorded him more limited powers than those possessed by a general administrator. The New Mexico defendants moved to dismiss on the ground that the husband did not qualify as a personal representative under New Mexico law. The New Mexico court held that the husband qualified, and Norton relies on this holding. However, in determining whether the husband qualified as a personal representative, the New Mexico court looked to New Mexico law:

> [The husband's] authority to bring and maintain the action flows from the [New Mexico] wrongful death statute itself and not from the probate, or estate, laws of this or any other state [and it is] *incorrect*

---

[3] *See also* Ark. Code Ann. § 28-1-102(9) (Repl. 2004) (defining a foreign personal representative as one serving "under appointment" made by another court).

*to say that his power to sue in this connection should be tested by his
authority to administer generally the estate of the deceased in the state issuing
the letters.*

. . . .

It is unimportant that the community administrator would not have
had the power to bring this suit in Texas, if as much could be
said. *We do not test the power of the plaintiff by the laws of Texas but by
those of New Mexico.* We look to the Texas appointment only to
determine whether plaintiff's status is such as will meet the rather
broad definition, "personal representative"; not a "personal repre-
sentative who would have the power to prosecute such a suit in
Texas" as is contended by defendants.

156 P.2d at 791, 793 (emphasis added).

■ We likewise look to Arkansas law to decide whether
Norton had standing to file suit in this state, based on this state's
statutory causes of action for survivor and wrongful death. As
previously discussed, under Arkansas law, he did not have stand-
ing. The trial court's grant of summary judgment is therefore
affirmed. Our holding makes it unnecessary to address Norton's
argument that he was authorized to file suit under Texas law.

PITTMAN, C.J., and GRIFFEN, J., agree.