Cite as 2025 Ark. App. 555

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

**No.** CV-24-503

| | |
|---|---|
| JASON BRAYFIELD, AS ADMINISTRATOR OF THE ESTATE OF PRESTON BRAYFIELD<br><br>APPELLANT<br><br>V.<br><br>KRISTOPHER GOULD<br><br>APPELLEE | **Opinion Delivered** November 19, 2025<br><br>APPEAL FROM THE POINSETT COUNTY CIRCUIT COURT<br>[NO. 56CV-23-83]<br><br>HONORABLE PAMELA HONEYCUTT, JUDGE<br><br>REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

Jason Brayfield ("Brayfield"), as administrator of the estate of Preston Brayfield ("Preston"), appeals from the Poinsett County Circuit Court's order granting summary judgment to appellee Kristopher Gould and dismissing Brayfield's wrongful-death and survival claims with prejudice. Brayfield argues that the trial court erred in finding that he lacked standing to bring the lawsuit. We reverse and remand for further proceedings.

## I. *Background*

On May 30, 2020, Preston, a Missouri resident, was working a highway construction job in Poinsett County when he was struck and killed by Gould, an Arkansas resident, who was intoxicated when he drove through the construction zone.[1] On April 13, 2023,

---

[1]We affirmed Gould's negligent-homicide conviction for which he was sentenced to fifteen years' imprisonment. *Gould v. State*, 2023 Ark. App. 227.

Brayfield filed a motion in Missouri to pursue a wrongful-death claim and executed a bond through Western Surety Company, which is authorized and licensed to do business in both Missouri and Arkansas. He filed the bond with the Missouri probate court. On April 18, the Missouri probate court's clerk issued letters of administration to Brayfield appointing him as personal representative of Preston's estate. The letters of administration provided that Brayfield could administer Preston's estate "independently without adjudication, order, or direction" of the probate court and with "full power and authority as provided by law." On April 24, Brayfield filed a civil action in Arkansas to recover damages for both survival and Preston's wrongful death. Attached to the Arkansas complaint were the Missouri letters of administration and the Missouri corporate-surety bond.

Gould filed a motion to dismiss, for judgment on the pleadings, or alternatively summary judgment, alleging that Brayfield lacked standing to file the complaint because he had not been appointed administrator of Preston's estate by an Arkansas court and had not filed for an ancillary administration in Arkansas. Gould argued that Brayfield also did not post a bond in Arkansas before filing his complaint. Gould further contended that Brayfield's failure to name all of Preston's heirs at law in the wrongful-death action made the complaint a nullity. According to Gould, Brayfield's lack of standing rendered his complaint null and void. Gould also argued that the statute of limitations had run on May 30, 2023, and that the complaint should be dismissed with prejudice because it had not been timely and properly commenced by a party with standing and that any amendment could not relate back to the original filing.

Brayfield responded by stating that Ark. Code Ann. § 16-61-110 (Repl. 2005) provided that he, as an out-of-state personal representative, was authorized to bring a lawsuit in Arkansas without the necessity of an ancillary or special administration. He argued that he complied with the statute because the Missouri probate court issued letters of administration appointing him personal representative, and he executed a bond and filed it in the Missouri probate court and then subsequently filed his lawsuit in Arkansas. Brayfield attached the affidavit of a licensed lawyer who regularly practices Missouri probate law who attested that the granting of letters of administration in Missouri serves to appoint the personal representative and authorize him or her to serve and act on behalf of the estate, including filing suit and prosecuting claims.

Because it considered matters beyond the pleadings, the trial court converted Gould's motion to one for summary judgment and granted it. The trial court made the following relevant findings of fact:

> 5. [Brayfield], a Missouri resident, was issued Missouri Letters of Administration on April 18, 2023, as the personal representative of the Estate [of] Preston Brayfield, Deceased, by the Circuit Court of Platte County, Missouri.
>
> 6. On April 24, 2023, [Brayfield] filed the instant matter styled as "Jason Brayfield, as Administrator of the Estate of Preston Brayfield, Plaintiff versus Kristopher Gould, Defendant" under Arkansas's wrongful death statute.
>
> . . . .
>
> 8. Prior to filing the instant suit, [Brayfield] was not appointed as an administrator or representative of the Estate in Arkansas or by an Arkansas court, and he neither filed for ancillary administration nor posted a bond or sought approval of a bond in an Arkansas court.

3

The trial court then discussed wrongful–death actions and noted that Arkansas law provides that substantive matters are determined by the law of the forum in which the accident and death occurred. The trial court pointed out the significant Arkansas connections to this case and concluded that, considering the undisputed facts in the case, Arkansas substantive and procedural law applies. The trial court noted that standing is a procedural matter requiring application of the law of the forum, which is Arkansas. The trial court then made the following conclusions of law:

15. Arkansas law subjects foreign representatives to the same qualification requirements as resident representatives and the administration of estates of resident decedents applies to ancillary administration of estates of nonresident decedents for purposes of wrongful death actions. [*Norton v. Luttrell*, 99 Ark. App. 109, 111, 257 S.W.3d 580 (2007)].

16. Based on the undisputed facts, the Court finds that [Brayfield], in his capacity as Administrator, is not a proper party and lacked the statutory authority in Arkansas to file this matter as a duly authorized personal representative or administrator of Preston Brayfield's Estate because he did not file for ancillary administration. *Norton v. Luttrell*, *supra*. Arkansas law required [Brayfield] to complete these ancillary administrative tasks before instituting this suit in Arkansas. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239.

17. There is no proof before the Court that Mr. Brayfield has been appointed and authorized by an Arkansas court to prosecute this litigation in Arkansas in his representative capacity; further there is no proof before the Court that Mr. Brayfield has the authority granted by an Arkansas court to represent the beneficiaries through any other means.

18. Consequently, because Arkansas courts do not test the power [of Brayfield] by the laws of Missouri but by those of Arkansas, the Missouri Letters of Administration and the following Order have no legal force or effect in Arkansas and are not binding on this Court.

Brayfield brought this appeal.

4

## II. *Standard of Review*

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *United Servs. Auto. Ass'n v. Norton*, 2020 Ark. App. 100, 596 S.W.3d 522. The burden of sustaining the motion rests with the movant, and all proof must be viewed in the light most favorable to the party resisting the motion, with any doubts or inferences resolved against the moving party. *Dooley v. Daily & Woods, PLLC*, 2025 Ark. App. 430. Summary judgment is not appropriate where the undisputed evidence nonetheless gives rise to inconsistent hypotheses from which reasonable minds might differ. *Id.* In a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Norton*, *supra.* As to issues of law presented, our review is de novo, which means that the entire case is open for review. *Id.* Likewise, questions of statutory interpretation are reviewed de novo. *Id.*

## III. *Discussion*

There are two causes of action that arise when a person's death is caused by the negligence of another: (1) a cause of action for the estate under the survival statute, Ark. Code Ann. § 16-62-101 (Repl. 2005) and (2) a cause of action for the statutory beneficiaries under the wrongful-death statute, Ark. Code Ann. § 16-62-102 (Supp. 2021). *Epps v. Ouachita Cnty. Med. Ctr.*, 2021 Ark. App. 389, 636 S.W.3d 787. The survival statute has been interpreted to mean that only an administrator, an executor, or a personal representative can file a survival action. *Id.*; Ark. Code Ann. § 16-62-101(a)(1). A wrongful-death action must be brought by and in the name of the personal representative of the

5

deceased person; however, if there is no personal representative, then the action must be brought by the heirs at law—the beneficiaries— of the deceased person. *Ivy v. Nugent*, 2023 Ark. App. 97, 661 S.W.3d 688; Ark. Code Ann. § 16-62-102(b); *see also Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005).

Here, Brayfield had been appointed as the administrator or personal representative of Preston's estate. The clerk of Missouri's probate court, pursuant to Mo. Rev. Stat. § 473.023, granted letters of administration and appointed Brayfield as personal representative to administer Preston's estate, which includes the power to "prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate," according to Mo. Rev. Stat. § 473.810(a)(15).

The trial court, however, determined that Brayfield was not a proper party and lacked statutory authority to file a suit for survival and wrongful death because Brayfield did not file for ancillary administration, which the trial court said was required prior to filing his complaint in Arkansas, citing *Travis Lumber, supra*. An ancillary administration is a separate but related proceeding to the administration of a decedent's estate in the jurisdiction where the decedent died. *Id*. Except when special provision is made otherwise, the law and procedure relating to the administration of estates of resident decedents shall apply to the ancillary administration of estates of nonresident decedents. Ark. Code Ann. § 28-42-101 (Repl. 2012). The trial court also faulted Brayfield for not seeking an appointment or

6

authorization by an Arkansas court to pursue the litigation here. The trial court erred in both regards.[2]

In *Travis Lumber*, Deichman sued Travis Lumber and others on behalf of his mother's estate in relation to his mother's land in Yell County, Arkansas. The Yell County Circuit Court granted a motion dismissing Deichman's complaints because he had failed to file for ancillary administration in Arkansas; rather, he had been appointed administrator of his mother's estate by a court in Cook County, Illinois. On cross-appeal of the dismissal of his claims, the Arkansas Supreme Court agreed with Deichman that he was not required to comply with the statutes governing ancillary administration given that he had not sought to institute an ancillary administration in this state, which would have served to collect assets and pay debts of the decedent in this locality. We thus agree with Brayfield that the trial court misinterpreted *Travis Lumber* in this regard. An ancillary administration was not required. Indeed, specific statutory authority is clear that there is no requirement for Brayfield to open any sort of administration in Arkansas to proceed with his claims.

*Travis Lumber* then discussed the applicability of Ark. Code Ann. § 16-61-110, which provides that

> [a]dministrators, executors, and guardians appointed in any of the states, territories, or districts of the United States, under the laws thereof, may sue in any of the courts of this state, in their representative capacity, to the same and like effect as if the administrators, executors, and guardians had been qualified under the laws of this state. However, the administrators, executors, or guardians shall be required, before they shall institute a suit or proceeding, to execute the same bond as is required of other nonresidents by the laws of this state.

---

[2]The trial court further erred in ruling that the beneficiaries had not been properly joined in the action because section 16-62-102(b) clearly provides that, because Brayfield had been appointed administrator of Preston's estate, he was the proper person to bring the lawsuit, not the individual beneficiaries.

While the *Travis Lumber* court held that the trial court erred in determining that Deichman was required to file for an ancillary administration in Arkansas, the court went on to hold that Deichman nevertheless did not have standing to sue because, when he filed his original complaint, he had not been appointed the administrator of his mother's estate *in any state*. Because the original complaint was a nullity, his amended complaint could not relate back. The *Travis Lumber* court went on to say,[3]

> Even if Deichman's amended complaint on behalf of the estate had not been time-barred, it, along with the original complaint, was a nullity for another reason. . . . Section 16-61-110, however, requires foreign administrators to "execute the same bond as is required of other nonresidents by the laws of this state" before instituting suit in Arkansas. . . . From our review of the record, it appears undisputed that Deichman did not give bond prior to the filing of either the original or the amended complaint.

2009 Ark. 299, at 26, 319 S.W.3d at 254–55.

The situation with Brayfield is unlike that in *Travis Lumber*. Here, before he filed a lawsuit in Arkansas, Brayfield executed a bond with Western Surety Company, which is authorized to do business in Arkansas, and filed it in the Missouri probate court. Pursuant to Ark. Code Ann. § 28-48-201(a) (Supp. 2021), as it read when Brayfield's complaint was filed, the court shall take a bond from the personal representative with a corporate surety authorized to do business in this state.[4] Brayfield secured such a bond before he filed his

---

[3]According to Brayfield, this part of *Travis Lumber* is not binding because the court's discussion of the bond issue was not necessary to the outcome of the case and is therefore obiter dictum. *See Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003). We need not decide this question.

[4]Subsequent to the filing of Brayfield's complaint on April 24, 2023, the statute's mandatory language with respect to a bond became permissive and now states that "the court may require a bond," but the statute did not become effective until August 1, 2023.

lawsuit in Arkansas and attached the bond, along with the letters of administration appointing him personal representative of Preston's estate, to the complaint.

Brayfield argues that the trial court erred in determining that he lacked standing because he failed to execute a bond in Arkansas before filing his lawsuit. In its written order, the trial court mentioned a bond in its factual findings by correctly stating that Brayfield had not posted a bond or sought approval of a bond in an Arkansas court; however, we cannot say that the trial court ruled on the sufficiency of Brayfield's bond, which was executed with a corporate surety authorized to do business in Arkansas. Because the trial court erred as a matter of law in determining that Brayfield was required to file an ancillary administration or seek appointment as administrator by an Arkansas court and made no legal conclusion as to the bond that Brayfield *did* execute, Gould was not entitled to judgment as a matter of law. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.

TUCKER and MURPHY, JJ., agree.

HARRISON, J., concurs.

KLAPPENBACH, C.J., and WOOD, J., dissent.

**BRANDON J. HARRISON, Judge, concurring**. How an estate representative properly commences a personal-injury suit in the civil division of circuit court is obviously a matter of substantial public and legal importance. This appeal involves that process, and an issue that has not been a common point of appellate litigation.

I agree the circuit court erred by concluding that Brayfield filed a null complaint though he had been validly appointed administrator in another state before the Arkansas

9

complaint was filed. And it is not clear enough to me that the court otherwise dismissed the complaint over the bond-related question in particular. But given our colleagues' dissent, and house odds that the "bond issue" will arise again on remand, I offer some additional observations about the statutes in play. It starts with the text of this brief statute, which has received most of the attention thus far:

> Administrators, executors, and guardians appointed in any of the states, territories, or districts of the United States, under the laws thereof, may sue in any of the courts of this state, in their representative capacity, to the same and like effect as if the administrators, executors, and guardians had been qualified under the laws of this state. However, the administrators, executors, or guardians shall be required, before they shall institute a suit or proceeding, to execute *the same bond as is required of other nonresidents by the laws of this state.*

Ark. Code Ann. § 16-61-110 (Repl. 2005) (emphasis added). I will refer to the statute as now codified as "section 110."

In *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239, our supreme court addressed section 110. But once the court pulled the section 110 string, did it correctly identify the bond that statute cross-references? In my view, no. *Travis Lumber* has not been cited for the bond/case-commencement point since its release in 2009; and no appellate court has since addressed the intersection this case involves. So this appeal presents a rare opportunity to explore what the law does or does not command on this point: how does an estate representative who was appointed in another state properly commence a tort suit for a survival claim in Arkansas?

The plaintiff in *Travis Lumber* brought some claims as his mother's successor trustee, but he also brought survival claims as her nominated executor in Illinois. The circuit court held the complaint was a nullity as to the survival claims. First, the plaintiff had not been

appointed in an ancillary probate proceeding (or any other probate proceeding) in Arkansas, *and* he sued before his Illinois appointment took effect. Second, he did not post the bond mentioned in section 110—whatever bond that was. Curiously, no one pursued that rather obvious question to the end either in the record below or here on appeal. (Hello de novo review.)

In *Travis Lumber*, our supreme court affirmed the dismissal of the survival claims. It rejected the defendant's argument that the plaintiff had to comply with the statutes that govern an ancillary probate proceeding. The supreme court also held he lacked standing to sue under section 110 because he had not yet been appointed executor anywhere. *Id.* at 25, 319 S.W.3d at 254 (citing *Hubbard v. Nat'l Healthcare of Pocahontas, Inc.*, 371 Ark. 444, 267 S.W.3d 573 (2007)). Finally, the supreme court pointed out that the plaintiff had not posted a bond. It assumed, and this is a critical point, that section 110 incorporated a bond requirement from our Probate Code—specifically, the bond a domestic personal administrator had to post.[1]

The dissent's position makes me pause for several reasons. One is that the parties in *Travis Lumber* did not brief what bond section 110 required, if it was not the bond Ark. Code Ann. § 28-42-103 required an ancillary administrator to post. The defendant argued all the ancillary administration requirements applied; the plaintiff argued none of them

---

[1]*Id.* at 26, 319 S.W.3d at 255 (citing Ark. Code Ann. §§ 28-48-101(b)(6)(A) & -201). In 2023, the General Assembly amended sections 28-48-201 & -206 to make this administrator's bond discretionary and easy for the circuit court to dispense with. Act 326 of 2023, §§ 3–5.

11

applied. But the survival claims were a nullity anyway because the plaintiff filed them *before* he was appointed in any state.

A deeper look into section 110's history reveals that the bond requirement it incorporates is not "jurisdictional" in the sense that a party has a "one and done" chance at properly commencing a tort suit to establish personal jurisdiction. Simply put, in *Travis Lumber*, the supreme court misidentified the bond requirement section 110 incorporates. Since it was enacted in 1843, the law that became section 110 has always referred to an older law that, since 1838, has required that all *nonresident* plaintiffs post a bond for costs. And the supreme court itself *had recognized so*. That 1838 cost-bond law is now Ark. Code Ann. § 16-68-301 (Repl. 2005). I call it "section 301."

It has nothing to do with probate. Here is why that matters. The "nullity" doctrine holds that failing to perfect appointment to a capacity needed to bring a statutory claim affects the circuit court's jurisdiction. *See, e.g.*, *St. Paul Mercury Ins. Co. v. Cir. Ct. of Craighead Cnty.*, 348 Ark. 197, 73 S.W.3d 584 (2002) (granting writ of prohibition); *see also Hubbard*, *supra* (order appointing special administratrix not entered before she sued); *Norris v. Dunn*, 184 Ark. 511, 43 S.W.2d 77 (1931) (domestic guardian's failure to give bond). But the cost-bond requirement in section 301—which may one day have a face-to-face with the Supersession Rule—is, and always has been, expressly waivable and curable under accompanying provisions. It does not erect a jurisdictional hurdle. To hold otherwise adds a condition precedent to commencing a tort case in the civil division of circuit court—one

12

that is not expressly found in the Arkansas Rules of Civil Procedure (Rules 3 and 4 in particular).[2]

Back to the history, which reveals why I believe the supreme court applied the wrong statutory bond section in *Travis Lumber*; it then overreached in my opinion and equated a cost-bond requirement to a condition precedent to filing a tort suit in circuit court. Here is how the law that became section 110 read when it was passed in February 1843:

> *Be it enacted by the General Assembly of the State of Arkansas*, That administrators, executors, and guardians, appointed in any of the States, Territories, or Districts of the United States, under the laws thereof, may sue in any of the courts of this State, in their representative capacity, to the same and like effect, as if such administrators, executors, or guardians, had been qualified under the laws of this State; *Provided*, That such administrators, executors, or guardians, shall be required, before they shall institute such suit or proceeding, *to execute the like bond as is required of other non-residents, by the laws of this State.*

Act of 1 Feb. 1843 (last emphasis added).

Before the Act became section 110, it was codified as English's Digest Ch. 7 §§ 1 & 2 (1848) (chapter titled "Administrators, Executors, & Guardians—Foreign"); Gould's Digest Ch. 7 §§ 1 & 2 (1858) (same); Gantt's Digest § 4473 (1874) ("Pleadings and Practice"); Mansfield's Digest § 4937 (1884) (same); Sandels & Hill's Digest § 5627 (1894) (same); Kirby's Digest § 6003 (1904) (same); Kirby & Castle's Digest § 7441 (1916) (same); Crawford & Moses Digest § 1093 (1921) ("Civil Procedure"); Pope's Digest § 1309 (1937)

---

[2]Unlike *Norris*, 184 Ark. 511, 43 S.W.2d 77, this is not a special proceeding. Even if the bond section 110 refers to were an administration bond, as our supreme court assumed in *Travis Lumber*, requiring the plaintiff to post it in this civil action would impermissibly add to the conditions to commence an action in violation of the separation of powers.

(same); and Ark. Stat. Ann. § 27-805 (1947) (same).[3]  It has never been amended.  What does its language tell us?  First, it tells us the General Assembly was referring to a bond requirement under Arkansas law as it existed on 1 February 1843.  An act cannot cross-reference something if that something doesn't already exist somewhere in the law.

One can be forgiven for missing it today, but two previous codes stated outright what bond was required.  In 1858, Gould included the reference, "See COSTS."  The law requiring nonresident plaintiffs to post a bond for costs (now section 301) was in section 1 of the "Costs" chapter.  Gould's Digest Ch. 40 § 1 (1858).  In the Arkansas Statutes Annotated (1947), the reference is "Bond of nonresidents, § 27-2301."  Section 27-2301 is now section 301.

Here is how that bond requirement read in 1843 when the General Assembly pulled it into the Act:

> [I]in all suits in law or equity, where the plaintiff . . . shall not be a resident of this State, the plaintiff . . . shall, before he institutes such suit, file in the office of the clerk of the circuit court in which the action is to be commenced, the obligation of some responsible person, being a resident of this State, by which he shall acknowledge himself bound to pay all costs which may accrue in such action.

Rev. Stat. ch. 34 § 1 (1838).  Later, it became English's Digest Ch. 40 § 1 (1848); Gould's Digest Ch. 40 § 1 (1858); Civil Code § 698 (1869); Gantt's Digest § 908 (1874); Mansfield's Digest § 1036 (1884); Sandels & Hill's Digest § 781 (1894); Kirby's Digest § 959 (1904); Kirby & Castle's Digest § 1073 (1916); Crawford & Moses's Digest § 1844 (1921); Pope's

---

[3]For unknown reasons, the digests issued after 1858 and before 1947 omit the sentence from the Act that mentions the bond.

14

Digest § 2363 (1937); and Ark. Stat. Ann. § 27-2301. It has not been materially amended

since 1843 either.[4] Here is how it reads today:

> Before commencing an action, a plaintiff who is a nonresident of this
> state . . . shall file in the clerk's office a bond, with sufficient surety and to be
> approved by the clerk, for the payment of all costs which may accrue in the
> action in the court in which it is brought or in any other court to which it
> may be carried, either to the defendant or to the officers of the courts.

Ark. Code Ann. § 16-68-301(a).

The enacted texts alone demonstrate that, in 1843, section 110 referred to the cost-

bond requirement that became section 301(a). But we also have a supreme court decision

from 1877 that recognized as much. In *Tucker v. West*, defendants who were sued by an

Arkansas-appointed administrator moved to require a bond for court costs. 31 Ark. 643

(1877). The circuit court ordered the bond and dismissed the suit when the administrator

did not comply. The supreme court reversed. It held that a *domestic* administrator could

not be required to post a bond for costs because there was no statute like section 110 that

applied to Arkansas residents:

> Administrators and executors appointed in other States, etc., are
> permitted to sue in the courts of this State, but are expressly required to give
> bonds for costs, as other non-residents. Gantt's Digest, § 4473. Gould's
> Digest, Ch. 7.
> We have no statute expressly requiring domestic administrators and
> executors to give bonds for costs in any case.
> A non-resident plaintiff, or a plaintiff who becomes a non-resident
> after the institution of a suit, is required to give bond for costs. Gantt's Digest,
> §§ 908, 910.

---

[4]In 1869, the General Assembly made a narrower and more readable version section 698 of the Civil Code. In 1941, it added the option to pay security for costs into the court registry instead of posting a bond. Act 344 of 1941, § 1; *see also* Ark. Code Ann. § 16-68-301(b) (that option).

*Id.* at 645.  Note the internal citations above.  Gantt's Digest § 4473 is now section 16-61-110; Gantt's Digest § 908 is now section 16-68-301(a).[5]  Neither law has materially changed since 1843 when the Act was passed.  So the cross-reference then must be the cross-reference now.

The requirement that a nonresident plaintiff post a bond for costs is not a *jurisdictional* requirement.  At all times since 1838, it has set up an expressly waivable and curable procedural objection.  Had the parties and the circuit court explored the internal reference in section 110 deeply, everyone would have known this.  Here are those accompanying provisions, in 1838, ringing crystal clear:

> 2.  If any such action shall be commenced without filing such obligation, the circuit court shall, **on motion**, dismiss the same, and the attorney for the plaintiff shall be ruled to pay the costs arising thereon.
> . . . .
> 4.  If such plaintiff shall fail, on or before the day [specified by the court], to file the obligation of some responsible person, being a resident of this State, whereby he shall bind himself to pay all costs which have accrued,

---

[5]In an earlier opinion the parties in *Travis Lumber* did not cite—and the supreme court did not discuss—the court held that section 110 (then Kirby's Digest § 6003) *excused* an administratrix appointed in New York from qualifying as administratrix under Arkansas law, which did not allow a married woman to serve:

> The plaintiff derived her powers from letters of administration issued to her from the proper court exercising probate jurisdiction in the state of New York, where the decedent lived and claimed his citizenship at the time of his death, and where the plaintiff also resided.  A foreign executor or administrator is permitted, by the statutes of this state, to sue here.  Kirby's Dig. § 6003.  Under the laws of that state, which must control us in determining the question, and of which we take judicial knowledge (Act April 11, 1901, Kirby's Dig. § 7823), married women are legally capable of acting as administratrixes, and, that being true, it necessarily follows that the marriage of an administratrix did not revoke her letters.

*St. Louis, Iron Mountain & S. Ry. Co. v. Cleere*, 76 Ark. 377, 381, 88 S.W. 995, 996 (1905).  In *Travis Lumber*, the supreme court gave the same unamended statute the opposite effect of *requiring* administrators appointed elsewhere to qualify for appointment under Arkansas law.

or which may accrue, in such action, the court shall, **on motion**, dismiss the suit.

Rev. Stat. ch. 34, §§ 2 & 4 (1838) (emphasis added). Now, those provisions today:

An action in which a bond for costs is required by subsection (a) of this section and has not been given shall be dismissed **on the motion of the defendant** at any time before the judgment, **unless the bond is filed in a reasonable time to be allowed by the court after the motion is made therefor**, securing all past and future costs. The action **shall not be dismissed or abated** if a bond for costs is given in such time as the court may allow.

Ark. Code Ann. § 16-68-301(c) (emphasis added). No way this statute erects the requirement to nullify a tort complaint if there is a bond-related snafu. The opposite is true, and it is why the circuit court's and the dissent's positions are mistaken.

Note how the statute expressly contemplates that an adversary must raise ("on motion of the defendant") the bond issue and complain about it; and if that happens, then the defect is entirely curable on the court's order ("[t]he action shall not be dismissed or abated if a bond for costs is given in such time as the court may allow"). Ignoring for now the potential Amendment 80 and separation-of-powers issues that float, there is no way to read the interplay of sections 110 and 301 as requiring the nullification of tort complaints in the manner the circuit court and dissent approve.

Because the bond referred to in section 110 is a bond for court costs that is, and always has been, a waivable and curable requirement (see section 301), failing to post it could not have nullified a tort complaint or zapped the circuit court's jurisdiction over a tort suit commenced under the rules of civil procedure. In fact, our supreme court has held that a plaintiff whose suit was dismissed for failing to post a bond for costs was entitled to the benefit of another 1838 law: the savings statute. *State Bank v. Magness*, 11 Ark. 343, 346

n.a (1850); *see also Walker v. Peay*, 22 Ark. 103, at 109–10 (1860); Rev. Stat. ch. 91, § 21 (1838).

★ ★ ★

The bond requirement in section 110 was never meant to be jurisdictional, and nothing in the *Travis Lumber* briefs or opinion indicates the Arkansas Supreme Court knew that its interpretation of section 110 was affected by its previous opinions in *Tucker*, *supra*, and *Cleere*, *supra*. Regardless of which bond statute does or does not apply, they all express that "requirement" in terms showing it is a curable (even waivable) issue that cannot support the holding that a bond is required as a condition precedent to filing a tort complaint in Arkansas, with the failure to do so warranting a dismissal as a matter of law. That is manifestly *not* the law.

**WENDY SCHOLTENS WOOD, Judge, dissenting**. The majority has contorted itself to reverse on an argument that Brayfield has never made because it has misread the circuit court's order, all the while ignoring the arguments he did make on appeal and avoiding an Arkansas Supreme Court decision[1] that is directly on point.[2]

At no time in the proceedings below and nowhere in his appellate briefs has Brayfield argued that his Missouri bond satisfied the requirement of Arkansas Code Annotated section 16-61-110 (Repl. 2005) that he "execute the same bond as is required of other nonresidents

---

[1] *See Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239.

[2] While I disagree with the majority decision to reverse and remand on the bond question, I agree with the majority that the circuit court erred in finding that Brayfield was required to file an ancillary administration before filing the instant lawsuit.

18

by the laws of this state." Moreover, he never asked this court to remand to determine whether the Missouri bond was sufficient. To the contrary, what Brayfield argues on appeal is that once he "met the Missouri requirements necessary to act as an administrator of [his son's] estate," he was not required "to post any bond in order to initiate civil litigation in Arkansas" and that any reading of *Travis Lumber* otherwise is at best "obiter dictum" and at worst "flawed."

Rather than addressing the bond question Brayfield presents on appeal, the majority asks a brand-new question made out of whole cloth: Did Brayfield's Missouri bond satisfy section 16-61-110? In an attempt to answer its own question, the majority suggests that Brayfield complied with section 16-61-110 when he executed a Missouri bond with a surety company licensed to do business in Arkansas.[3] But because the majority "cannot say that the [circuit] court ruled on the sufficiency of Brayfield's bond," and the circuit court "made no legal conclusion" on the Missouri bond, the majority holds that this case must be remanded for further findings.

But of course, the circuit court did rule on the sufficiency of Brayfield's Missouri bond. A copy of that bond was attached to his complaint, and the circuit court explicitly found that Brayfield had "neither filed for ancillary jurisdiction *nor posted a bond or sought*

---

[3]The majority cites Arkansas Code Annotated section 28-48-201(a) (Supp. 2021) for support; however, at the time Brayfield's complaint was filed, this statute also required that the bond be in an amount fixed by the court not less than double the amount, or if the surety is corporate, then not less than the amount, of the estimated value of the property that may reasonably be expected to pass through the hands of the personal representative. There is no evidence in the record that Brayfield's Missouri bond met these additional requirements.

*approval of a bond in an Arkansas court.*" (Emphasis added.)  I am not sure what more the majority wants the circuit court to say.

The circuit court ruled on the bond issue, and Brayfield argues on appeal that once he was properly appointed to serve as the administrator of his son's estate in Missouri, he did not have to take any other action to file his lawsuit in Arkansas. He does not argue that the Missouri bond satisfied section 16-61-110. If a party fails to make a particular argument on appeal, that argument is considered abandoned. *Housing Auth. of City of Texarkana v. Johnson Constr. Co., Inc.*, 264 Ark. 523, 535, 573 S.W.2d 319, 323 (1978). Any basis for reversing a case on appeal should originate in the arguments advanced by the appellant, not from arguments created by appellate judges. *Dalrymple v. Dalrymple*, 74 Ark. App. 372, 377, 47 S.W.3d 920, 923 (2001). It is improper for the majority to create a new argument for Brayfield for reversal in this case. *See Folkers v. Buchy*, 2019 Ark. App. 30, at 10, 570 S.W.3d 496, 502 (stating that it is a well-settled principle of appellate law that we will not make an appellant's argument for him in order to reverse).

For these reasons, I would decide the bond arguments raised by Brayfield on appeal rather than the one created by the majority.[4] Therefore, I respectfully dissent.

---

[4]The concurring judge goes one step further than the majority and explains how he thinks the Arkansas Supreme Court got the bond question wrong in *Travis Lumber*. Even assuming the concurring judge is right, Brayfield failed to present any of the arguments discussed in the concurrence to the circuit court or to this court. De novo review does not permit us to substitute our own arguments in order to reverse the circuit court. *See Jones v. Jones*, 320 Ark. 449, 453, 898 S.W.2d 23, 25 (1995) ("De novo review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized."). Also, our de novo review does not allow us to disregard applicable supreme court precedent. We must follow the precedent set by the supreme court. *Holiman v. Holiman*, 2020 Ark. App. 558, at 3, 615 S.W.3d 398, 400.

KLAPPENBACH, C.J., joins in this dissent.

*Easley & Houseal*, by: *Austin A. Easley*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Matthews, Sanders & Sayes, P.A.*, by: *Ml Sayes* and *James T. Sayes*, for appellee.