Cite as 2026 Ark. App. 121

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-24-790

| | |
|---|---|
| ROSSE FAMILY REVOCABLE LIVING TRUST, KAREN SIEGEL, TRUSTEE; SAMUEL SIEGEL; AND SAMSON SIEGEL<br><br>APPELLANTS<br><br>V.<br><br>CITY OF JONESBORO<br>APPELLEE | Opinion Delivered February 25, 2026<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JCV-23-1726]<br><br>HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**ROBERT J. GLADWIN, Judge**

The Rosse Family Revocable Living Trust (the "Trust"), Karen Siegel, trustee; Samuel Siegel; and Samson Siegel appeal the August 8, 2024 order of the Craighead County Circuit Court. This case arises from a 2015 nuisance-abatement action and the subsequent lien foreclosure involving two parcels of property, specifically lots 5 and 6, block 1 of Morse's Addition to Jonesboro, Arkansas, parcel number 01-144184-29500; and lots 7, 8, and 9, block 1 of Morse's Addition to Jonesboro, Arkansas, parcel number 01-144184-29600 (collectively, the "Property") in Craighead County, Arkansas. When the nuisance proceedings began in 2015, both parcels were owned by the Trust.

On August 18, 2015, the Jonesboro City Council adopted a resolution condemning the Property. The original condemnation resolution had simply identified the property as

"700 Cate, owner Samuel A. Rosse III." The condemnation was administratively and judicially challenged and remained in litigation for several years. There is one related case to this appeal: *Rosse v. City of Jonesboro*, 2016 Ark. App. 580.

In January 2020, Karen, as trustee, executed and recorded a deed transferring one parcel—lots 7, 8, and 9—to her sons and beneficiaries of the Trust, Samson Siegel, Samuel Siegel, and William Siegel individually (collectively, the "Siegel brothers"), while the Trust retained ownership of the remaining parcel, lots 5 and 6. County tax records reflected this transfer and showed Samson, Samuel, and William as the record owners of lots 7, 8, and 9. Counsel for the City of Jonesboro ( the "City") confirmed that the deed of record was filed on January 16, 2020.

Beginning in June 2020, after the owners of the Property failed to remedy the nuisance conditions, the City undertook abatement and clean-up work at its own expense. The structure on the Property was demolished on October 25, 2020. Testimony from Michael Tyner, a Jonesboro code enforcement officer, at the final hearing in this case established that debris removal and related cleanup continued until October 27, with a final walk-through occurring on October 29.

On November 4, the City, by Mr. Tyner, served a thirty-day notice of collection and demand for payment of clean-up costs to the address of record for the Property. The notice was addressed to "Rosse Family Trust c/o Karen Siegel" at Karen's address, 623 Cate Street, Jonesboro, AR 72401. According to Mr. Tyner's testimony, the exhibits submitted by the

City, and the lien affidavit, no notices were mailed or directed to Samuel, Samson, or William.

Because the costs remained unpaid, the Jonesboro City Council adopted a resolution on February 2, 2021, authorizing a lien for the clean-up costs related to the Property described as "700 Cate, Parcels 01-144184-29500 & 01-144184-29600, Jonesboro, Arkansas 72401, owned by Rosse Family Trust LEGAL DESCRIPTION: Lots 5-6, 7-8 PT 9, Block 1 of Morse's Addition to Jonesboro, AR" pursuant to Arkansas Code Annotated section 14-54-903 (Supp. 2023). As part of the lien resolution, the city council made findings in support of the lien, including the following:

> WHEREAS, the demolition of the structure was completed on October 25, 2020 using city funds in an amount of $124,836.50;
>
> WHEREAS, the City of Jonesboro seeks to perfect a lien against the affected property to cover the cost of the work pursuant to A.C.A. 14-15-903;
>
> NOW THEREFORE BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF JONESBORO, ARKANSAS, THAT:
>
> 1. The city should proceed with placing a lien on the property located at 700 Cate, Jonesboro, AR 72401

Additionally, the affidavit of statutory lien filed by the City also stated that "the structure was condemned" and that "demolition of the structure was completed on October 25, 2020." The City filed its affidavit of statutory lien with the Craighead County Clerk on February 23, 2021.

On October 10, 2023, the City filed a complaint in circuit court to enforce the clean-up lien by foreclosure. At that time, lots 5 and 6 remained owned by the Trust, and lots 7, 8, and 9 remained owned individually by Samuel, Samson, and William.

On February 20, 2024, Karen, on behalf of the Trust, filed a timely answer and motion to dismiss. The City alleges that Samson and William were personally served in January 2024 because they resided with Karen at that time; Samuel was served by warning order published in the *Jonesboro Sun* newspaper on March 14 and March 21, 2024, after unsuccessful attempts at personal service. None of the Siegel brothers filed responsive pleadings. On March 4, 2024, the City responded to the Trust's motion to dismiss.

A hearing was held on June 28. Karen appeared through counsel; Samson and Samuel appeared pro se; and William did not appear. At the outset and again at the close of evidence, the City made oral motions for default judgment against the Siegel brothers based on their failure to answer the complaint. The circuit court ultimately entered default judgment as to William but denied default as to Samson and Samuel.

Appellants disputed whether the lien had been filed within the relevant 120-day statutory period and whether proper statutory notice had been provided to the owners of lots 7, 8, and 9. Evidence established that only the Trust "c/o Karen Siegel" received mailed notice of the lien and related proceedings; no notices were directed to Samson, Samuel, or William by name.

On August 8, 2024, the circuit court entered an order, judgment, and decree of foreclosure. The court found that William was in default, that the lien had been timely filed

within 120 days of completion of cleanup, and that statutory notice was sufficient because it had been mailed to the address of record and addressed to Karen, whom the court found served as fiduciary and trustee for Samson, Samuel, and William. The court granted the City a judgment for the lien amount of $124,836.50, declared the lien a first-priority lien on the Property, and ordered foreclosure and sale of both of the parcels that constitute the Property.

Appellants timely filed a notice of appeal on September 6, 2024, and this appeal followed.

## II. *Standard of Review*

Following a bench trial, our standard of review is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Agrifund, LLC v. Regions Bank*, 2020 Ark. 246, 602 S.W.3d 726. We view the evidence and all reasonable inferences arising therefrom in the light most favorable to the appellee. *Id.* Disputed facts and determinations of witness credibility are within the province of the trier of fact. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Laura Taylor Living Tr. v. David L. Littrell Rev. Tr.*, 2025 Ark. App. 604, __ S.W.3d __. As to issues of law presented, our review is de novo, which means that the entire case is open for review. *Brayfield v. Gould*, 2025 Ark. App. 555, __ S.W.3d __. Likewise, questions of statutory interpretation are reviewed de novo. *Id.*

## III. *Discussion*

### A. Default Judgment and Finality

Appellants first argue that the circuit court's entry of default judgment as to William was improper and rendered the order nonfinal. To preserve an argument for appellate review, a party must raise the argument below and obtain a ruling. *Lucas v. Wilson*, 2011 Ark. App. 584, 385 S.W.3d 891. The preservation requirement also applies to challenges to default judgments. *Rennels v. Four Seasons HVAC Distribs., Inc.*, 2011 Ark. App. 274. A party seeking relief from a default judgment must first seek relief in the circuit court under Arkansas Rule of Civil Procedure 55 (2025), at a minimum, before asking an appellate court for relief. *Sutton v. Falci*, 2024 Ark. App. 46, 683 S.W.3d 593.

Here, no motion to set aside the default judgment was filed on William's behalf, nor was any ruling obtained from the circuit court on the alleged deficiencies in the default procedure. Because appellants failed to obtain a ruling on their Rule 55 arguments, those arguments are not preserved for appellate review. *See, e.g.*, *Lockard & Williams Ins. Servs., Inc. v. Waldrip*, 2020 Ark. App. 274, 600 S.W.3d 662.

To the extent appellants attempt to frame their challenge as one of subject-matter jurisdiction or finality, their argument is likewise unavailing. Circuit courts have original jurisdiction over actions to enforce liens on real property and to foreclose such liens. Ark. Code Ann. §§ 16-13-201(a) (Supp. 2025) & 14-54-904 (Supp. 2025); *see also River Bar Farms, L.L.C. v. Moore*, 83 Ark. App. 130, 118 S.W.3d 145 (2003). The circuit court therefore possessed subject-matter jurisdiction over this action. Any alleged irregularity in the default procedure did not divest the court of jurisdiction.

6

Finally, we hold that a written motion for default was not required. Rule 55 requires only that a party entitled to default judgment "apply to the court therefore" and further states that written notice of the application for default judgment is required only if the party against whom judgment by default is sought has appeared in the action. *See* Ark. R. Civ. P. 55(b). Additionally, an application to a circuit court for an order made during a hearing or trial is not required to be in writing. *See* Ark. R. Civ. P. 7(b)(1) (2025).

Appellants' reliance on *Shelby County Health Care Corp. v. Teague*, 2014 Ark. App. 382, 439 S.W.3d 74, is misplaced because *Teague* does not require that all motions for default judgment be in writing. In *Teague*, the plaintiff filed a petition for declaratory judgment to determine a lien amount. The defendant participated in the case—filing an answer and a motion to dismiss and appearing at trial. *See id.* During the trial, the plaintiff made an oral motion to declare the defendant's pleadings a nullity and thereafter requested a default judgment as part of a posttrial brief, which the circuit court ultimately granted. *Id.* On appeal, we reversed the default judgment, determining that no motion for default judgment, either written or oral, had been made by the plaintiff since her request for an order of default judgment was made only in a posttrial brief. *Id.*

*Teague* is distinguishable from the instant case and not controlling for two reasons. First, the City made permissible oral requests for default judgment during the hearing before the circuit court. *See* Ark. R. Civ. P. 7(b)(1). In the initial exchange with the circuit court, counsel for the City stated that "[the Siegel brothers] have not filed an answer and are in default today, and we're asking for a judgment against them to that effect." Likewise, in

7

closing arguments, counsel for the City asserted that "our first position is still that the parties—that the Siegel sons are in default," and later reiterated that "it's our position that they are in default[.]" Second, a written application for the default judgment was not required because William made no appearance in this action. *See* Ark. R. Civ. P. 55(b). Pursuant to Rule 7(b)(1) and Rule 55, no written motion or application for default was required. Accordingly, we affirm on appellants' first point.

B. Timeliness of the Lien Filing

Appellants next contend that the City failed to file its lien within the 120-day period required by Arkansas Code Annotated section 14-54-903(c)(2) and therefore had no enforceable right to foreclose. Statutory interpretation is reviewed de novo, and we construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See Ahern Rentals, Inc. v. Salter Constr., Inc.*, 2014 Ark. App. 423, 439 S.W.3d 699. When the language is plain and unambiguous, we give effect to the statute's plain meaning. *Hammerhead Contracting & Dev., LLC v. Ladd*, 2016 Ark. 162, 489 S.W.3d 654.

Section 14-54-903 requires that a lien be filed "no later than one hundred twenty (120) days after the town or city completes the clean-up work on the property." Ark. Code Ann. § 14-54-903(b)(2). The plain language of the statute makes completion of the clean-up work—rather than the date of demolition or the date the lien amount is determined—the triggering event for the 120-day filing period.

8

Whether the clean-up work was completed within the meaning of the statute is a question of fact. We will not reverse the circuit court's factual findings unless they are clearly erroneous. *Crews v. Crews*, 2022 Ark. App. 68, 640 S.W.3d 700.

The circuit court found that the clean-up work was completed on October 27, 2020, on the basis of testimony by both Mr. Tyner that debris removal continued beyond October 25 and by Angela Sparks, the Craighead County Solid Waste Disposal Authority chief financial officer, that the final loads were transported from 700 Cate Street to the landfill on October 27. This testimony was corroborated by landfill records and was not contradicted by any evidence presented by appellants. The circuit court, as fact-finder, was entitled to credit this testimony. *See id.*

The lien was filed on February 23, 2021—within 120 days of October 27, 2020. On this record, we cannot say that the circuit court's finding regarding the completion date of the clean-up work was clearly erroneous. Because the lien was filed within the statutory period, the circuit court did not err in concluding that the lien was timely and enforceable. We therefore affirm on appellants' second point.

C. Statutory Notice

Appellants' final argument is that the circuit court erred in finding that the City complied with the statutory notice requirements of Arkansas Code Annotated section 14-54-903 as to lots 7, 8, and 9, which were owned by Samuel, Samson, and William. On this point, we reverse.

The lien at issue is a statutory lien created by Arkansas Code Annotated section 14-54-903. Statutory lien provisions are in derogation of the common law and must be strictly construed. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651. Our appellate courts have repeatedly held that notice provisions in lien statutes are to be strictly construed, thus requiring strict compliance, and cannot be satisfied by substantial compliance. *See Ground Zero Constr., Inc. v. Walnut Creek, LLC*, 2012 Ark. 243, 410 S.W.3d 579; *Cannon Remodeling & Painting, Inc. v. Mktg. Co., Inc.*, 79 Ark. App. 432, 90 S.W.3d 5 (2002); *Books-A-Million, Inc. v. Ark. Painting & Specialties Co.*, 340 Ark. 467, 10 S.W.3d 857 (2000).

Section 14-54-903(f) provides that the amount of a clean-up lien may be determined at a public hearing held after thirty days' written notice by mail, return receipt requested, "to the owner of the property if the name and address of the owner are known." The statute further requires that, after completion of the work, the City provide a second notice to the owner of the total amount of the lien. These provisions expressly require notice to "the owner" of the property.

When statutory notice requirements as to service are not strictly complied with, a judgment or decree affecting or divesting property rights of one not served has been called absolutely null and void. *See Davis v. Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972).

The record demonstrates that lots 7, 8, and 9 were owned individually by Samuel, Samson, and William when the required notices were sent. County records reflected this ownership, and the transfer had been recorded months before the City's clean-up work

began. It is undisputed that the City sent notice only to the Trust "c/o" Karen and did not send any notice addressed to Samuel, Samson, or William by name.

The circuit court nevertheless found the notice sufficient because it was mailed to the address of record and addressed to Karen, whom the circuit court deemed a fiduciary and trustee for Samuel, Samson, and William. We hold that this finding is clearly erroneous.

First, the statute requires notice to "the owner" when the owner's name and address are known. Here, the owners' identities were readily ascertainable from county records. The City's code-enforcement officer, Mr. Tyner, specifically testified that he did not review those records and instead relied on "historical knowledge" in sending notice only to the Trust. The statute does not permit a municipality to rely on historical familiarity in lieu of determining current ownership where ownership is readily ascertainable as it was here.

Second, there was no evidence that Karen was authorized to accept notice on behalf of Samuel, Samson, or William with respect to lots 7, 8, and 9. Those lots were no longer held in trust, and there was no evidence of any agency relationship or designation authorizing Karen to receive statutory lien notices for the individual owners. The circuit court's conclusion that Karen functioned as a fiduciary or agent for purposes of statutory notice conflates distinct legal concepts and finds no support in the record or the statute.

Third, the statutory requirement of notice to "the owner" cannot be satisfied by sending notice solely to a different legal entity, even if related to the owners, when the statute expressly requires notice to the owner and the owners are known. Because lien statutes must

11

be strictly construed and strictly complied with, substantial compliance is insufficient. *Ground Zero Constr., Inc.*, *supra*; *Books-A-Million*, *supra*.

The record before us indicates that the City failed to strictly comply with the statutory notice requirements of section 14-54-903 as to lots 7, 8, and 9. Without proper statutory notice to the record owners of those parcels, the lien cannot be enforced against them.

We emphasize, however, that the Trust, which did receive notice through its trustee, Karen, did not challenge notice on this basis. Accordingly, the defect in notice pertains only to lots 7, 8, and 9 owned individually by Samuel, Samson, and William.

We affirm the circuit court's rulings on appellants' first and second points. We reverse the circuit court's finding that statutory notice was sufficient as to lots 7, 8, and 9 and remand for entry of an order consistent with this opinion, limiting enforcement of the lien and foreclosure to those parcels for which statutory notice was properly given.

Affirmed in part; reversed and remanded in part.

WOOD and MURPHY, JJ., agree.

*Jeremy B. Lowrey*, for appellants.

*Carol Duncan* and *Heather Owens*, Jonesboro City Attorney's Office, for appellee.